## THE STATE v. PATRICK, *Appellant.*

### IN BANC.

1. **Rape : PRACTICE : EVIDENCE.** On a trial for rape, evidence by the prosecutrix of conversations between herself and third persons, tending to show a conspiracy to spirit her away to prevent her testifying is inadmissible for any purpose, where such conversations were wholly unconnected with the defendant. [ Per SHERWOOD, C. J., and GANTT and MACFARLANE, JJ.]

2. ——— : ——— : ———. The error of admitting such testimony is not cured by an instruction limiting it to the purpose of supporting the prosecutrix as to the purity of her motive in being at the locality of the alleged rape. [ Per SHERWOOD, C. J., and GANTT and MACFARLANE, JJ.]

3. **Practice ; GENERAL OBJECTION TO EVIDENCE.** Where evidence offered is incompetent for any purpose, a general objection to its admission is sufficient.

4. ——— : IMPEACHMENT OF WITNESS : RAPE. The prosecutrix on a trial for rape constitutes no exception to the rule that evidence to support the character of a witness will not be received, where the witness has not been attacked.

5. ——— : EVIDENCE : RAPE. On a trial for rape, evidence of previous assaults is admissible for the purpose of proving intent.

6. ——— : INSTRUCTIONS : EXCEPTIONS. Where no exceptions are saved to the giving of instructions, the propriety of giving them cannot be considered on appeal.

7. **Impeachment of Witness : INSTRUCTION.** An instruction which leaves it to the jury to determine when and whether a witness has been successfully impeached is erroneous.

8. ——— : ——— : ———. An instruction declaring in effect that notwithstanding a witness may have been successfully impeached, yet he must be believed, if corroborated, is erroneous. The jury may, in such case, believe or disbelieve him as they see fit.

9. ——— : EVIDENCE : OPINION OF WITNESS : RAPE. A witness who has visited and carefully examined the locality of an alleged rape, and is well acquainted with the prosecutrix and defendant, may state whether, in his opinion, considering the size of the respective parties, defendant could have pulled the prosecutrix to the place in question, if she was resisting.

10. **Rape : EVIDENCE : CORROBORATION.** The prosecutrix, in a trial for rape, must be corroborated, and where her testimony as to the perpetration of the alleged offense is explicitly contradicted by the defendant, thus creating an equipoise of oath against oath, the evidence will be insufficient to support a conviction.

11. ———: ———. The evidence in this case examined and *held* insufficient to support a conviction for rape.

*Appeal from Lewis Circuit Court.*—HON. BEN. E. TURNER, Judge.

REVERSED.

*Blair & Marchand* and *J. E. Thompson* for appellant.

(1) The court improperly allowed the prosecutrix to testify to former attempts of rape upon her by defendant. Wharton's Crim. Ev. [9 Ed.] sec. 46, p. 45; sec. 48, p. 49; sec. 49, p. 49; secs. 29, 30, pp. 35, 36; secs. 32, 34, 35, pp. 37, 39, 40; 1 Greenl. Ev. [14 Ed.] secs. 52, 53; *State v. Daubert*, 42 Mo. 242; *Parkinson v. People*, 25 N. E. Rep. 764; *Shipley v. People*, 86 N. Y. 375; *State v. Walters*, 45 Iowa, 389. (2) The conversations between prosecutrix and the brothers and sister-in-law of defendant offered to show a conspiracy between the latter to keep the prosecutrix from testifying were admissible for no purpose. *State v. Parker*, 90 Mo. 382. (3) Geo. Robinson should have been allowed to give his opinion as to defendant's ability to pull the prosecutrix over the fence. 3. Greenl, Ev. [14 Ed.] sec. 211. (4) There was no evidence upon which to base the fourth instruction for the state. The fifth instruction for the state is too broad. The sixth instruction for the state is wrong. The court should not have left it for the jury to determine whether or not the witnesses were successfully impeached. That was a question of law. *Anderson v. McPike*, 86 Mo. 293. (5) Instructions 3, 4, 5, 6 and 7 should have been given as asked by defendant. The prosecutrix is a competent witness, but the credibility of her testimony must be left to the jury upon the circumstances of fact that concur in that testimony. Which circumstances are, *first*, that she is of good fame; *second*, that she presently discovered (or made known)

the offense, or, as others express it, "made recent complaint;" *third*, that party fled. 4 Black. Com. [Chitty Ed.] 213–14, 164 ; Russell, Crimes [2 Am. Ed.] p. 562; 2 Bish. on Crim. Proc. [3 Ed.] sec. 963; 1 Hawkins' P. C. 170 ; 1 Hale's P. C. 633–4 ; 1 East's P. C., 445, 446. There is no intimation that the case may be submitted to the jury without proof of concurring circumstances. Upon the other hand Blackstone says, if prosecutrix be, *first*, of evil fame ; *second*, if she be unsupported by others ; *third*, if she conceal the injury for any considerable time after she had opportunity to complain ; *fourth*, if she might have been heard and made no outcry, these and the like circumstances carry a strong but not conclusive presumption that her testimony is false or feigned. 3 Greenl. Ev. [14 Ed.] secs. 212–13 ; 1 Whar. Crim. Law. [9 Ed.] sec. 565. If instructions asked did not suit the court it should have given its own and declared the whole law. R. S. 1889, sec. 4208. (6) More than the testimony of the prosecutrix is required to convict. Sack. Inst. [2 Ed.] No. 11, p. 767 ; Whar. Cr. Ev. [9 Ed.] sec. 273 ; *State v. Wilson*, 91 Mo. 410 ; 104 N. Y. 481 ; 10 Atl. Rep. (Md.) 219 ; *Dun v. State*, 12 N. E. Rep. (Ohio) 826. If there is no outcry and prosecutrix remains friendly with accused after offense, these facts raise a strong presumption of innocence on the part of the accused. *Barney v. People*, 22 Ill. 160. The same presumption arises where there is no injury to the clothing and prosecutrix concealed the wrong for several days. *State v. Cross*, 12 Iowa, 66. No outcry is strong evidence against prosecutrix's story. *State v. Cone*, 1 Jones (N. C.) L. 18 ; *Clifford v. People*, 87 Ill. 210; *Eyler v. State*, 71 Ind. 49 ; *Leoni v. State*, 44 Ala. 110; *Topolank v. State*, 40 Tex. 160 ; *State v. Byrne*, 47 Conn. 465. Where defendant denies the rape prosecutrix must be corroborated. *Mathews v. State*, 19 Neb. 330 ; *Gazley v. State*, 17 Tex. 267 ; *People v. Trerney*, 67 Cal. 54 ; *Dickey v. State*, 21 Tex. 430; *Bailey v. Com.*, 82 Va. 107 ; *Carney v. State*,

21 N. E. Rep. ( Ind.) 48, note ; *Hall v. People*, 11 N.W. Rep. ( Mich.) 414 ; *State v. Cook*, 22 N. W. Rep. ( Iowa ) 675 ; *Lawson v. State*, 17 Tex. 292. If there has been a want of promptness in making complaint or declarations the court should not admit evidence of complaint or declarations until delay has been satisfactorily excused or justified. No excuse shown in this case. *Dunn v. State*, 12 N. E. Rep. ( Ohio ) 826-29.

*John M. Wood*, Attorney General, and *E. A. Dowell*, Prosecuting Attorney, for the State.

(1) Prior sexual attempts on the same woman are admissible, for the purpose of showing the intent of defendant in making the assault. The testimony of the prosecutrix as to other attempts made by the defendant to have intercourse with her was properly admitted. These attempts were prior to the rape committed on her by defendant. Whar. Crim. Ev. [ 9 Ed.] secs. 28, 35, 46, 49, and notes ; 1 Greenl. Ev., sec. 53, and notes ; 3 Russ. on Crimes, 228, *et seq.; State v. Cooper*, 85 Mo. 256. (2) In cases of rape, and assaults with intent to rape, complaint made recently thereafter by the injured party, and efforts made to bring the offender to justice, is competent for the purpose of corroborating the story of the prosecutrix, and showing that she was guiltless of any misconduct leading to the assault. 1 Russell on Crimes, p. 922. (3) The testimony introduced on the part of the state, relative to the acts of defendant's brothers and Millie Patrick toward the prosecutrix, was admitted by the court for the purpose of showing whether the conduct and motive of prosecutrix in being at the place where she says she was ravished by defendant was consistent with innocence and purity. It was certainly admissible for this purpose. *State v. Warner*, 74 Mo. 83. It was further admissible, as was also the other testimony relative to the taking away of the prosecutrix from Martha Botts' place, where she had

been left by her husband, and her conduct after she was taken away, not only for the purpose of showing that she was a pure and innocent woman and acting in good faith throughout, but as tending strongly to show a conspiracy among the parties, of which defendant was a co-conspirator, to spirit her away, and, by putting her in fear and contempt of her husband, to defeat the charge for assault with intent to rape, which had been preferred, by preventing her from appearing as a witness, and to prevent the institution of a prosecution for rape. Although the transactions extended over several days and were had at different places, still they had in view one common object, and evidence as to the declaration and conduct of all the parties concerned was competent. *State v. Cooper*, 85 Mo. 256, and authorities cited. "The object of the judicial investigation is the truth, and the tendency of modern ruling is, under reasonable rules, to exclude nothing that can throw light upon the transaction." *Caughlin v. Hauessler*, 50 Mo. 126 ; *State v. Gabriel*, 88 Mo. 631. The testimony as to these facts was all intimately connected with the main fact. It showed the consistency of the conduct, statements, testimony, and the purity of the prosecutrix, and the turpitude and inconsistency of the conduct of the defendant and his brothers and sisters, and was also properly received as bearing upon the main question. *State v. Ernest*, 70 Mo. 520 ; *State v. Gabriel, supra; State v. Cooper, supra; State v. Warner, supra; State v. Nugent*, 71 Mo. 136 ; *State v. Greenwade*, 72 Mo. 298 ; *State v. Mathews*, 98 Mo. 125. The general objections to the introduction of this evidence on the part of the state were made by the defendant, that it was "irrelevant, immaterial and incompetent." "Such objections are obviously bad where the evidence is competent in any way or manner to establish the contention of one of the adverse parties." *State v. Meyers*, 99 Mo. 120. (4) The opinion of John Robinson as to whether defendant

would have had sufficient strength to drag the prosecutrix through the fence to rape her was inadmissible. It was not a matter for expert testimony. (5) No error was committed in giving the fourth instruction in regard to the flight of the defendant. *State v. Jackson*, 95 Mo. 652 ; *State v. Williams*, 54 Mo. 170 ; *State v. Gee*, 85 Mo. 649; *State v. King*, 78 Mo. 555 ; *State v. Bush*, 95 Mo. 199. (6) The fifth instruction, as to the credibility of the witnesses, was correct. *State v. Talbott*, 73 Mo. 347 ; *State v. Vansant*, 80 Mo. 70. (7) The sixth and thirteenth instructions should be taken together, and they properly declare the law as to the duty of the jury in considering and weighing the evidence. *State v. Miller*, 93 Mo. 263. (8) The third, fourth, fifth and sixth instructions asked by defendant were unsupported by the evidence in the cause, and were in the nature of a comment on certain portions of the testimony, and were otherwise erroneous. Instruction, numbered 10, given on the part of defendant, was the proper one to give on the questions presented in said refused instructions. *State v. Wilson*, 91 Mo. 410.

SHERWOOD, C. J.—The crime charged was rape, and on trial had the defendant was convicted. The punishment assessed was fifteen years in the penitentiary ; but the trial court, believing the punishment greater and more severe than was warranted by the evidence, lopped off five years, and sentenced the defendant but for the remainder of the assessed term.

As, in the progress of this opinion, there will be a sufficient statement of the salient facts in this cause, it is unnecessary to set forth those facts now.

I.   If universal precedents are to be followed, and the plainest principles of evidence are not to be ignored, the conversations which are said to have occurred between the prosecutrix and Millie, Tom and Jim Patrick were wholly inadmissible for any purpose whatsoever, unconnected as these conversations were

with the defendant. *State v. Rothschild*, 68 Mo. 52.
These conversations seem to have been admitted for the
special purpose of bolstering up the prosecutrix, and
showing in her defense why she happened to be at a
certain spot when Charlie Patrick, the defendant, hav-
ing been released at Monticello because of her failure to
appear and prosecute him, arrived at that opportune
moment and outraged her.   Upon what principle of
either ethics or law, an absent and imprisoned defend-
ant is to be sacrificed for the benefit of a prosecuting
witness it is difficult to conceive.

But look at the excuse that witness gives for her
ambulatory movements and her reasons for escape from
her husband ; she says defendant came to her dwelling
and made improper solicitations, but was repulsed.
After a few days he comes again and she "knowed he was
going to say something to her," announced her inten-
tion of going to her aunt Martha Botts' house, and left
him, but he overtook her and before she knew it grabbed,
tripped her and threw her down, when she managed by
a ruse about some one coming to escape from him and
by running reached his mother's and thus frustrated
his purpose.   Of this assault, though so nearly success-
ful, and of the previous solicitations, she made com-
plaint to no one.   Some days after this, how long it
does not appear, the defendant, she says, again came to
her house, and, announcing his purpose, shut the doors,
grabbed and threw her on the bed where they "had two
or three wrestles," when he seeing his brother coming
desisted, etc.

Of this assault made in the daytime, on Monday, she
told her husband that night after its occurrence, and he
went down to Monticello the next day, Tuesday, to pro-
cure the arrest of defendant, which was accomplished
on Friday.   When the husband returned and made
arrangements to get a buggy to take the prosecutrix
down to Monticello to prosecute defendant, she, as it is

said at the instance of the Patrick brothers and sister
in-law of the defendant, gave her husband the slip, on
the ground, as she states, that they told her her hus-
band would kill her, or would get a divorce from her
if she went to Monticello and appeared against the
defendant, and that her husband "had done given the
girl the engagement ring." In other words the prose-
cuting witness desires to be believed when she tells that
she believed that her husband was going to kill her or
have her punished in some way or get a divorce from
her, *merely for complying with his wishes and her
wishes to prosecute her attempted ravisher!* Aside
from all considerations of the utter incompetency of
such testimony, the flimsy nature of the excuse given
is altogether too frivolous to merit serious attention.

And where the evidence is thus incompetent a general
objection to its admission is sufficient. *State v. Meyers*,
99 Mo., *loc. cit.* 120, *et seq.* The admission of this evi-
dence alone constitutes reversible error, and that error
was not cured by an instruction limiting the evidence
thus erroneously admitted for the purpose of supporting
the prosecutrix as to her purity of motive in being at
the locality of the alleged outrage. The tendency
and the only tendency of that testimony was to show a
conspiracy between the Patrick brothers and the sister-
in-law to spirit the prosecutrix away, but on this score
it was wholly inadmissible, the defendant being no
party to such conspiracy. This being true, upon what
principle is it that such unauthorized conspiracy can be
made the medium for giving credit to a witness who
testifies to, and relies on, such conspiracy? The theory
of the introduction of such evidence is just this : Intro-
duce your evidence of a conspiracy between strangers to
the record, and then if you cannot make it work because
the defendant is not in it, still you may make it work
to uphold the "honesty and purity" of the witness
who testifies to its existence. In a word, worthless as
a *conspiracy,* but most excellent as *corroboration!*

The State v. Patrick.

Besides, it was not competent to corroborate the witness *before* she had been attacked or impeached, and this evidence so-called was admitted prior to that time. 1 Greenleaf, Ev. [ 14 Ed.] sec. 469 ; 1 Whart. Ev., sec. 569 ; *State v. Thomas*, 78 Mo. 327 ; *State v. Grant*, 79 Mo. 113.

And a prosecution for rape makes no exception to this rule, nor does the prosecutrix enjoy any privileges in this behalf not accorded to other witnesses. *People v. Hulse*, 3 Hill, 309 ; *Young v. Johnson*, 25 N. E. Rep. 363, and cases cited. And even when admitted such corroborative evidence must proceed from *extraneous* sources, and not come from the mouth of the witness when on the stand who seeks to obtain from her own lips the desired and desirable corroboration.

II.   There was no error in admitting evidence of prior assaults of the defendant upon the prosecutrix ; the crime charged consisted of two elements, the felonious intent and the force to consummate that intent ; the former element could well be proven by prior assaults or attempts. The authorities supporting this view are abundant and will be found collated in *People v. O'Sullivan*, 104 N. Y. 481.

III.   The instructions given or refused will now be discussed, and first given those on behalf of the state. They are as follows :   " 1.   The jury are instructed that, if they shall believe from the evidence that the defendant at the county of Lewis, in the state of Missouri, in July, 1889, did ravish and carnally know the prosecutrix, Annie K. Botts, forcibly and against her will, then in such case they will find him guilty, and assess his punishment at imprisonment in the penitentiary for a term of not less than five years, or at death.

" 2.   The jury are instructed, if they believe from the evidence beyond a reasonable doubt that the defendant had sexual intercourse with the said Annie K. Botts, forcibly and against her will, then the defendant may be guilty of rape, although the evidence may show that said Annie K. Botts may have not made

immediate outcry after the commission of the alleged offense, or may have heretofore been on friendly terms with defendant, and on unfriendly terms with her husband.

"3.    While the jury should acquit the defendant should they entertain a reasonable doubt of his guilt, still such doubt to justify an acquittal must be reasonable and arise from the insufficiency of the evidence in the cause and not a mere possibility of innocence.

"4.    In passing on the question of defendant's guilt it is competent to consider whether or not he fled from the state for the purpose of avoiding arrest and to escape prosecution when first charged with the offense.

"5.    The jury are the sole judges of the weight of the evidence and the credibility of the witnesses; and, in determining the weight to be given to the testimony of the different witnesses in this case, the jury are authorized to consider the relationship of the witnesses to the party on trial if such relationship has been proved; their interest, if any, in the event of the trial; their temper, feeling or bias if any has been shown; their demeanor while testifying; the reasonableness of their story, and all the circumstances tending to corroborate or contradict such witness; and to give such credit to the testimony of such witness as under the circumstances such witness seems to be entitled to.

"6.    The jury are instructed that they should consider the entire evidence in the case, introduced by the state and the defendant; but the jury are at liberty to disregard the evidence of all such witnesses, if any there be, as have been successfully impeached either by direct contradiction or by proof of having made different statements at other times, or by proof of bad moral character, or by proof that the general reputation of such witnesses for truth and veracity in the neighborhood in which such witness lives is bad, except in so far as such witnesses have been corroborated by other credible evidence or facts and circumstances proved on the trial.

The State v. Patrick.

"7.   They are instructed that under the statutes of this state the defendant is a competent witness in his own behalf, but the fact that he is a witness testifying in his own behalf may be considered by the jury in determining the credibility of his testimony.

"8.   If the jury find the defendant guilty the verdict may be in the following form: 'We the jury find defendant guilty in manner and form as charged in the indictment and assess his punishment at  *  *  *  and signed by your foreman.'   If the jury find for defendant the verdict may be in the following form: 'We the jury find the defendant not guilty.'"

As no exceptions were saved to the instructions, numbered 1, 2 and 3, given at the instance of the state, the propriety of giving them cannot be directly considered though some reference will hereafter be made to instruction, numbered 2, leaving instructions 4, 5 and 6 for direct comment, so far as necessary.   The court of its own motion give the following instructions:

"11.   Should the evidence show to the exclusion of every reasonable doubt that Millie Patrick, Thomas Patrick, or "Dug" Patrick, or James Patrick may have wrongfully made false representations to Annie K. Botts, or may have conspired together to carry said Annie K. Botts away from her husband and detain her in custody, still such fact cannot be considered as evidence of rape against the defendant.   Defendant is not on trial for the acts of such parties.

"12.   Defendant is upon trial for rape.   It would not be competent for the jury to find the defendant guilty of assault with intent to rape, of fornication, kidnapping or any other offense than the rape charged.

"13.   The jury are instructed that although some of the witnesses who have testified may have been shown to have made contradicting statements in reference to matters about which they have testified and that others may have been shown to have had bad reputations for truth and veracity, honesty and integrity, or

morality in the neighborhood in which they live, still such facts can only be considered for the purpose of determining the degree of credit to be given to the testimony of such witness.

"14. The evidence introduced on behalf of the state, relating to the acts of the defendant's brothers and Millie Patrick in reference to the prosecutrix before the time when she swears she was ravished, was admitted by the court, and can only be considered by the jury for the purpose of determining whether or not the motive and conduct of the prosecutrix were consistent with honesty and purity in being at the place where she swears she was raped, if the jury should believe from the evidence that she met defendant at such place.

"15. The jury are instructed that under the law defendant is presumed to be innocent until his guilt shall be proven by the state, and that if after considering and comparing the whole of the evidence in the case the jury entertain a reasonable doubt of the defendant's guilt they will give to him the benefit of such doubt and find him not guilty."

There was no exception saved to the giving of any of these instructions but number 13.

The court at the instance of the defendant gave the following instructions: "1. That the indictment found by the grand jury against defendant in this case cannot be considered by the jury in determining the question of the guilt of defendant.

"2. That before the defendant can be found guilty of rape upon the prosecutrix, Annie K. Botts, the jury must believe from the evidence in the cause that defendant assaulted and forcibly had sexual intercourse with her or actually and forcibly penetrated her body with his private parts against her will and consent; and that said Annie K. Botts manifested the utmost reluctance and used the utmost resistance against such sexual intercourse or penetration."

"9.   The evidence which has been introduced as to the general reputation of defendant in the neighborhood in which he lived for morality can only be considered for the purpose of determining the amount of credit to be given him as a witness.   It can be considered for no other purpose.

"10.   The court instructs the jury that, in determining the degree of credit to be given to the evidence of the prosecutrix in regard to the alleged rape, it is competent to consider the conduct of the prosecuting witness at and about the time thereof, the length of time that elapsed after the alleged rape had been committed before she made it known.   The fact that she was in defendant's company after the alleged offense without complaining against him; and her conduct toward her husband after the alleged offense was committed and the other facts and circumstances surrounding such witness as testified to in the case."

At the same time the court refused to give the defendant the following instructions: "3. That in case of rape it devolves upon the state to show before a conviction can be had that the party ravished made complaint thereof immediately after being ravished or as soon thereafter as such party has opportunity so to do.   Now the court instructs the jury that no such complaint by the prosecutrix, Annie K. Botts, has been proven in this case.

"4.   That, under the laws of this state, it is made the duty of the party ravished to make complaint of such ravishment immediately or as soon after such alleged ravishment as an opportunity can be had to do so.   The court instructs the jury that the state has failed to make proof of any such complaint by the prosecutrix, Annie K. Botts, in this case.   Now, if the jury shall believe from the evidence that said Annie had opportunity to make such complaint and failed to do so, then such failure to do so is inconsistent with

the defendant's guilt and renders the charge of rape upon her by defendant improbable.

"5. The jury are instructed that the charge of rape made by the prosecutrix, Annie K. Botts, against defendant remains uncorroborated by any evidence in the cause; now if the jury shall believe from the evidence in the cause that after the alleged rape upon said Annie she continued friendly intercourse with defendant then the law presumes such friendly intercourse inconsistent with defendant's guilt and renders her charge of rape against defendant improbable.

"6. The jury are instructed that the charge of rape made by Annie K. Botts against defendant remains uncorroborated by any evidence in the cause; now if the jury shall believe from the evidence in the cause that said Annie concealed the alleged rape until on Friday after the alleged commission of such rape upon her, then the law presumes such concealment inconsistent with defendant's guilt."

"8. That, although the jury may believe from the evidence in the cause that some of defendant's witnesses made statements different from the statements testified to by them upon this trial, yet the jury cannot consider such statements as evidence in the cause against defendant; such statements if the jury shall believe they were made can only be used to affect the credibility of the testimony of the witnesses making them; and, if the jury shall believe that such witnesses were honestly mistaken in making them, then such mistake cannot be used to affect the credibility of such witnesses; and, if the jury shall believe the statements made by such witnesses here in court are true, then it is the duty of the jury to so regard them, regardless of such other statement."

Exceptions were saved to the refusal to give the instructions just copied.

Looking at the instructions given at the instance of the state no necessity exists for any examination into

the propriety of giving the fourth or fifth ; their correctness may be conceded. So much, however, cannot be said for the sixth instruction, and for these reasons : A witness may be impeached in several ways, *e. g.: First*, by disproving the facts testified by him ; *second*, by evidence of general reputation showing his character for veracity to be bad ; *third*, by evidence of contradictory statements made out of court ; and, *fourth*, in this and some other states by showing that the general reputation of the witness as to morality is bad. *State v. Grant, supra.*

This instruction is objectionable in more features than one. Without guide post or mile post, boundary, limitation or condition, it leaves to the *jury* to say when and whether a witness has been "successfully impeached." It is erroneous in another feature, in this : Notwithstanding a witness may have been "successfully impeached," by anyone of the various means the law recognizes as sufficient, still the witness must be believed provided the witness be corroborated. Now it certainly can make no difference in point of principle in what way the impeachment of the witness be accomplished. In *Paulette v. Brown*, 40 Mo. 52, an instruction under discussion was : "If the jury find that Thomas Tallis wilfully and knowingly swore falsely to any material matter in this case, the jury are authorized to discredit the whole of the testimony of said Tallis." And of this instruction, after a review of the earlier cases in this court, it was held that the instruction was proper.

In another case prior to the one just cited, RICH-ARDSON, J., speaking for himself held, concerning a similar instruction, that the jury in such case should be instructed that it was their duty to disregard such testimony. *State v. Dwire*, 25 Mo. 553.

In *Brown v. Railroad*, 66 Mo. 588, the sixth instruction was : "If the jury believe from the evidence that any witness has wilfully sworn falsely in regard to any

material fact, they may entirely disregard the testimony of such witness, unless such testimony as to some part is supported by other witnesses, or by corroborating circumstances." And discussing this instruction this court speaking through HENRY, J., said: * * * "Is the jury not at liberty to disregard the testimony of one who has committed perjury in their presence, as to some fact testified to by him, because as to that or some other fact testified to by him he is corroborated? If the corroborative evidence establish the fact, they may find the fact on the corroborative evidence, but if the corroborative evidence is insufficient of itself to prove the fact, but in connection with the evidence of the false witness does prove it, is the jury bound to believe the evidence of the witness, and, because corroborated, find the fact as he testifies? This is not the law; the jury may or may not believe him; that is a matter for their determination, and we hold that it is true, as a legal proposition, that, if a witness has wilfully sworn falsely as to a material fact, the jury are at liberty to disregard his entire testimony, notwithstanding he may have been corroborated as to that or any other fact to which he testified. *State v. Mix*, 15 Mo. 153; *State v. Dwire*, 25 Mo. 553. The case of *State v. Cushing*, 29 Mo. 215, is not in conflict with this doctrine. *Blanchard v. Pratt*, 37 Ill. 243, is to the contrary, but was cited by this court in *Paulette v. Brown*, 40 Mo. 60, and expressly disapproved. The authorities in other states cited by respondent's attorneys, to the effect that although a witness has sworn falsely, yet if corroborated in any manner the jury may give him such credit as they think he deserves, we find no fault with; but the instruction complained of here told the jury, substantially, to give him *credit if he was corroborated*." For the reasons given, and under the authorities cited, the giving of the instruction in question, must be held reversible error.

The State v. Patrick.

IV.  Touching the crime under discussion, Black-stone says: "The party ravished may give evidence upon oath, and is in law a competent witness; but the credibility of her testimony, and how far forth she is to be believed, must be left to the jury upon the circumstances of fact that concur in that testimony.  For instance: If the witness be of good fame; if she presently discovered the offense, and made search for the offender; if the party accused fled for it; these and the like are concurring circumstances which give greater probability to her evidence.  But on the other side, if she be of evil fame, and stand unsupported by others; if she concealed the injury for any considerable time after she had opportunity to complain; if the place where the fact was alleged to be committed was where it was possible she might have been heard, and she made no outcry; these and the like circumstances carry a strong but not conclusive presumption that her testimony is false or feigned."  4 Black. Com. 213.

These remarks are for the most part but a condensed statement from what had already been said by an earlier author.  1 Hale, P. C. 634, 635.

Wharton says:  "In prosecutions for rape, where the party injured is a witness, it is material to show that she made complaint while it was yet recent."  Crim. Ev. [9 Ed.] sec. 273.

The fact of the injured female making complaint if made *presenti facto*, and the state in which she was as to her clothing and as to her person, at the time of making complaint, are material circumstances and original evidence.  *Rex v. Clarke*, 2 Stark. 241; 3 Chit. Crim. Law, 813.

Some of the courts treat the complaint as part of the *res gestæ;* others look at it in a different light, but all concede that the reason the complaint is admissible at all is because such complaint is the spontaneous and instinctive utterance of the mental and bodily anguish of an outraged woman on whom has just been inflicted

the greatest and foulest of human wrongs. Such complaints stand upon the same basis of reception as do other expressions of mental and bodily feelings. Whether of affection or pleasure, pain, alarm or anguish, they are original evidence because they are the natural language of the emotions of the human heart, its suffering and passions. Whart. Crim. Ev. [9 Ed.] secs. 256, 262, 264, 270, 271, 272, 691; 1 Greenl. Ev. [14 Ed.] sec. 102. *Instinctiveness, naturalness and promptness* form the salient characteristics and test of their admissibility. If, however, the complaint be not *spontaneous* and *prompt;* if it be dragged forth from the reluctant lips of the prosecutrix by all the appliances of skilful interrogation, then it does not possess any of the probative force of a complaint, and should not have accorded to it any value in determining the issue joined. For this cause it is that, where a complaint is thus extorted from unwilling lips, courts have rejected it altogether, because of lacking the dominant characteristics which alone make such utterances receivable in evidence.

In *Parker v. State*, 10 Atl. Rep. 219, where no complaint was made, but the alleged offense was disclosed some six days afterwards, but only in response to questions, it was said by the court through BRYAN, J., "When an outrage has been committed on a woman, the instincts of her nature prompt her to make her wrongs known, and to seek sympathy and assistance. The complaint which she then makes is the natural expression of her feelings. It may, therefore, be shown in evidence as a circumstance which would usually and probably have occurred in case the offense had been committed. But the evidence which the court admitted is not of this nature. It is simply hearsay, a narration of a past event, and not the language of any emotion caused by the supposed occurrence." See also *Whitney v. State*, 35 Ind. 503; *State v. Burgdorf*, 53 Mo. 65; *Dunn v. State*, 12 N. E. Rep. 826; *Eyler v. State*, 71

Ind. 49, as showing the incompetence of a complaint not spontaneously made but extorted by interrogatories.

In Ohio, the *immediateness* of the complaint is essential to its admissibility. *Hornbeck v. State*, 35 Ohio St. 277, and cases cited. In *Johnson v. State*, 17 Ohio, 593, it is said: "There can be no doubt, that in a case of rape the declarations of the injured female, made immediately or soon after the injury inflicted, are competent testimony, provided the female herself has first been examined; competent not for the purpose of proving the commission of the offense, but as corroborative of, or contradictory to, her statements made in court. If these declarations are in accordance with the testimony given in court, they tend to strengthen and give effect to that testimony; if against it, the testimony is destroyed. If such testimony were to be entirely excluded when offered on the part of the prosecution, it would be extremely difficult to convict in any case. For, as a general rule, it would be dangerous to convict, unless immediate complaint was made by the female, to her friends or others."

In quite a recent case in that state it has been held that where a delay of several days occurs between the supposed offense and complaint made, the delay must first be satisfactorily explained before evidence of the complaint can be admitted. DICKMAN, J., on behalf of the court stating: "A controlling question, however, that arises in the case at bar is: How soon after the offense is committed must the female who has suffered the injury make the declarations in order to render evidence of such declarations admissible? It is well settled in Ohio that the declarations must be made immediately. Immediateness is essential to their admissibility. Such is. the language, substantially, of our decisions on the subject. Whether or not the declarations constitute a part of the *res gestae* when made immediately after the injury, they largely preclude the idea of the injured party having been practiced upon to fabricate a story. They are presumed

to be the natural outburst of outraged feelings, and, if made at all, would naturally be made at the first opportunity, while the injury is yet fresh and aggravating. Silence and delay in making known the wrong would be likely to awaken suspicion and doubt as to the truth of the complainant's statement. If, says Blackstone, she conceals the injury for any considerable time after she has had an opportunity to complain, such a circumstance would carry a strong presumption, though not conclusive, that her testimony is false or feigned. 4 Comm. 213. But when delay by the prosecutrix in making complaint or declaring the circumstances of the wrong has occurred, such delay may be explained and excused by proof of sufficient cause therefor; as, for instance, want of suitable opportunity or duress, or threats by the perpetrator of the wrong. *Higgins v. People*, 58 N. Y. 377 ; *State v. Shettleworth*, 18 Minn. 208 ( Gil. 191 ); *State v. Knapp*, 45 N. H. 148 ; *State v. De Wolf*, 8 Conn. 93. Yet, if there has been a want of promptness in making complaint or declaration as to the particulars of the injury after its perpetration, the court should not admit evidence of the complaint or declaration until the delay has been excused or justified. * * * Upon an examination of the record in the present case we discover no adequate explanation of the delay of the prosecutrix until December 30, before she disclosed the alleged occurrences on the night of the twentieth of December. It does not appear that in the meantime she was under restraint or the influence of threats, or that she apprehended any violence from the accused. And, when she did finally give a detailed account of the offense, it seems to have been drawn out in response to inquiries by her mother, and not to have been spontaneously given by herself. We are, therefore, of opinion that it was error in the court of common pleas to permit the state to give in evidence to the jury the declarations and statements made by the prosecution—not in th

presence of the accused—to her mother, Nancy Castor, as late as the thirtieth of December, 1886." *Dunn v. State, supra.*

The same doctrine has recently been announced in Michigan (*People v. Gage*, 28 N.. W. Rep. 835), where CHAMPLIN, J., said: "It is contended, that the testimony ought not to have been received because of the lapse of time after the outrage and the statement to the mother. The lapse of time occurring after the injury, and before complaint made, is not the test of admissibility of the evidence, but it may be considered as affecting its weight; and, when complaint is not made promptly, the delay calls for explanation before the court will admit it."

As to the promptness necessary in such cases, see, also, *Eyler v. State, supra; Topolanck v. State*, 40 Tex. 160. In the latter case where complaint was not made for several weeks and the testimony of the woman was not supported, it was ruled that a conviction should not be allowed to stand, REEVES, J., saying: "It would seem that the defendant was convicted alone on the testimony of the female alleged to have been injured, unsupported by other evidence, and not corroborated by circumstances. She says she told no one of what the defendant had done for several weeks, leaving it to be inferred that she had given information to some one after that time, but what it was is not disclosed. Whatever the disclosure may have been, or whoever may have been the party, that party is not named in her testimony, and not called as a witness to corroborate her statement. It was several weeks after the offense is said to have been committed, and long after she had opportunity to complain. * * * Though she was legally competent as a witness, these circumstances diminish the credit to be given to her testimony, and leave the question of the defendant's guilt in so much doubt that the jury were not authorized to render any other verdict than that of not guilty. And though the

court cannot express any opinion as to the weight of the evidence, nor sum up the testimony on the trial before the jury, as they are the exclusive judges of the facts, yet, on a motion for a new trial, it is the duty of the court to set the verdict aside when it is contrary to the law and the evidence."

Speaking of the necessity of corroborating the prosecutrix, Wharton says: "The *corpus delicti* includes violence done to the woman ; and if this could be shown by proof aside from her testimony, and such proof be not produced, a conviction ought not to be permitted to stand. Such is the general rule at common law."   1 Crim. Law [9 Ed.] sec. 565.

In *Mathews v. State*, 19 Neb. 330, when speaking of the absolute need of corroboration, and that corroborating proof was necessary according to Sir MATHEW HALE, MAXWELL, C. J., said :   "Under our statute the accused is permitted to testify in his own behalf, and in that regard the statute has changed the common-law rule so that, where his testimony expressly denies that of the prosecutrix, she must be corroborated to authorize a conviction.   For this purpose the prosecution may show that the prosecutrix made immediate complaint, and any marks upon her person or clothing which would indicate a struggle may be given in evidence for the purpose of showing the attack upon her.   Her statement cannot be used as evidence in chief, but may be inquired into on cross-examination."   *Oleson v. State*, 11 Neb. 276 ; 3 Greenl. Ev., sec. 213.

The law presumes that a woman who has suffered the indignity and brutality of a rape will not submit in silence to the wrong, but will at once take the necessary steps to bring the offender to justice.   This was one of the tests of the common law.   In that case as there was "no corroborating evidence whatever," the judgment was reversed.

These remarks and quotations have been made as prefatory to the consideration of the third, fourth, fifth

and sixth instructions asked by the defendant. Those authorities and the reasons on which they are based ought to dominate the decision in this cause.

Proceeding now to consider the instructions just mentioned, there can be no doubt that they are in accordance with the law as already laid down and with the facts disclosed by the record. There was no complaint under the terms of the authorities quoted, none that was testified to by any witness for the state, and none but what was the result of questions propounded to the prosecutrix by Al. Baltzell on the Friday next succeeding the Saturday on which the defendant is said to have perpetrated the crime, and he only obtained such statement by professing to know all about the affair, and then on the witness stand did not testify to the statement thus obtained, and it only appeared through the testimony of Mrs. Sarah Coons what revelations the prosecutrix had made to Baltzell. Such a so-called complaint does not fulfill the requirements of the law, and the court should have instructed as asked in the third instruction, because it was based upon the evidence and conformed to the law respecting rape as already set forth. In this case it was not pretended that there was any lack of opportunity to make complaint almost immediately, or any excuse offered in the nature of intimidation or fear for delay or failure in doing so.

The fourth, fifth and sixth instructions may be considered together. It was a fact abundantly sustained by this record that the testimony of the prosecutrix was uncorroborated by a single *iota* of evidence ; neither by a complaint, recent, prompt and spontaneous, nor by any outward *indicia* of violence to the person or torn or disordered clothing or any other token of mental or physical anguish. *And such facts being undisputed the court should have so instructed the jury, as a part of the law in the case.* How else, pray, are the jury to be informed of their duties except through the *media*

of instructions, given by the court? These observations find full support in a recent case decided during the past year by the court of appeals of New York, where the action was for damages for an alleged rape, and, though that was a civil action, the point decided is fully applicable to the case at bar. There O'BRIEN, J., delivering the opinion of the court, said : "The court, at the request of the defendant, instructed the jury, in substance, that the fact that plaintiff did not disclose the assault complained of within a reasonable time after the opportunity presented itself for her to do so was in itself a reason for impeaching the veracity of her story. It was undisputed, that the plaintiff delayed disclosing to her female friends the alleged conduct of the defendant towards her until she was satisfied of her pregnancy, though she met them frequently, and under circumstances that furnished a very favorable opportunity for her to do so. This was a circumstance bearing upon the plaintiff's credibility, and the general merits of her case, that was proper for the jury to consider, and the charge of the court in that respect was correct." *People v. O'Sullivan*, 104 N. Y. 481 ; 10 N. E. Rep. 880 ; *Young v. Johnson*, 25 N. E. Rep. 363. There is no essential difference between the instructions quoted and the ones under discussion. See, also, to the same effect touching the duty of the court to give similar appropriate instructions on such occasions : *Conners v. State*, 47 Wis. 523 ; *Higgins v. People*, 58 N. Y. 377 ; *Barney v. People*, 22 Ill. 160; *Hogan v. State*, 46 Miss. 274 ; *State v. Moxley*, 102 Mo. 374 ; *State v. Wilson*, 91 Mo. 410 ; *State v. Witten*, 100 Mo. 525 ; *People v. Dohring*, 59 N. Y. 374.

In the case last cited, a rape case, the court charged the jury " that the act must have been done by force, and against the will and resistance of the witness Fredrica;" but declined to charge as requested by defendant's counsel, "that the jury must be satisfied from the evidence, before finding the defendant guilty,

that Fredrica Brussow resisted the defendant to the extent of her ability on the occasion it is alleged the defendant committed the offense charged against him." Commenting on this refused instruction FOLGER, J., observed: "The charge, as made, did in general terms express the facts which made the crime. * * * Coupled with the refusal to charge as requested, it failed, however, to express all that it was necessary for the jury to find. The resistance must be up to the point of being overpowered by actual force, or of inability from loss of strength longer to resist, or from the number of persons attacking resistance must be dangerous or absolutely useless, or there must be duress or fear of death. * * * It was the extent of her ability, and not only that, but the extent of her ability on that occasion, that is, amid the circumstances in which she then was placed, to which the request to charge asked that the attention of the jury be directed. Is it not the law of this crime, in this state, that the woman must have resisted to the extent of her ability on the occasion on which she alleges that this grievous wrong was done her? Is not the law of her conduct in the transaction included in the form of words which the counsel for the prisoner offered to the court? Would it have been error to have so instructed the jury? To our thinking, these first two queries can have but one answer, in the affirmative; and that given, the last query must be replied to in the negative."

Besides, section 4208 of our statute, volume 1, Revised Statutes, 1889, declares that "the court must instruct the jury in writing upon all questions of law arising in the case, which are necessary for their information in giving their verdict [and a failure to so instruct in cases of felony shall be good cause, when the defendant is found guilty, for setting aside the verdict of the jury and granting a new trial]." The words included in brackets were added in the revision of 1889, and only serve to emphasize the previous mandatory

words. *State v. Banks*, 73 Mo. 592 ; *State v. Palmer*, 88 Mo. 568 ; *State v. Moxley*, 102 Mo., *loc. cit.* 392, and cases cited; *State v. Henson*, 106 Mo. 66.   But granting that the instructions asked were imperfect, still, under the unvarying rule heretofore announced by this court,. the asking of such improper instructions would necessitate the court to give those which were *proper*.   *State v. Mathews*, 20 Mo. 55 ; *State v. Jones*, 61 Mo. 232 ;. *State v. Kilgore*, 70 Mo. 546 ; *State v. Lowe*, 93 Mo. 547 ; *State v. Young*, 99 Mo. 666 ; *State v. Hickam*, 95. Mo. 332.

In any event, therefore, proper instructions should have been given covering the whole law of the case, and embracing within their scope all that was necessary for the jury to know in order to a proper discharge of their duties when considering of their verdict.   Cases are constantly arising in courts of justice where, but for the intervention of the court by instructions to the jury as to certain disputable presumptions, it would be impossible to administer the law.   For instance, as to the recent possession of stolen property, as to a receipt for the last quarter's rent, as to the presumption that a deed, though entirely missing from the chain of title, was really executed and delivered, and that forgery was committed in the venue where the forged paper was uttered.   *State v. Kelly*, 73 Mo. 608 ; *State v. Yerger*, 86 Mo. 33, and cases cited ; 1 Greenl. Ev., secs. 38, 46.

And it is the duty of the courts to give such instructions as to presumptions to juries, and that of juries in their findings to give such presumptions their ancient and customary effect.   *State v. Kelly, supra.* Taylor says :   "Such being the nature of disputable presumptions of law, it is obvious that, theoretically, they differ from mere presumptions of fact in three important particulars.   In the first place the judge is bound to explain to the jury whatever legal presumptions arise from the facts proved ; next, the jury are

bound to give full weight to the presumptions so explained," etc. 1 Taylor, Ev., sec. 111. Many a verdict would otherwise have its correct current turned awry but for this judicial interposition and information. The instructions asked or their substance should have been given. They were not comments on the evidence, but simply such information as justice demanded the jury should have in order intelligently to consider the facts before them. But not only were the jury denied the benefit of the proper instructions spreading open before their view the presumptive ear marks which the unbroken experience of ages has recognized as the true *indicia* of the crime of rape having been perpetrated, but the second instruction given at the instance of the state, though not excepted to, was admirably well calculated to mislead and confuse the jury as to the law of the case, and the necessity of prompt complaint being made, and other circumstances corroborative of the offense charged.

V. But one point remains to be considered ; that is, whether the evidence supports the verdict. A very strong intimation was given by Judge GANTT when delivering the former opinion of this court that the evidence in this regard was wholly insufficient. If the authorities already cited as to the absolute necessity of corroboration of the prosecutrix, where, as here, the defendant occupies the witness stand and explicitly denies the perpetration of the offense charged, thus creating an *equipoise* of oath against oath, then the evidence is wholly insufficient, as there is no corroboration whatever in this case. The authorities on this point commend themselves as being in accord with sound reason and universal human experience, and so this case might well be made to rest on the entire absence of any corroborative evidence.

But further on the absolute insufficiency of the evidence to support a conviction : And first as to the facility with which the prosecutrix was raped ; raped

twice, according to her own story ; raped twice in less than twenty-four hours. She told Al. Baltzell this about the journey from her Aunt Martha Botts' Friday night to Dug Patrick's : "That Tom brought a horse. Tom took her on behind and they rode along while in the night ; that after they rode a smart ways Tom got off, stood on ground, put his arms around her, slid her off the horse and raped her." This was testified to by her aunt, Mrs. Coons, and neither Baltzell nor the prosecutrix denied it, and it must, therefore, be taken as true. Now, Tom Patrick was a *cripple*, with virtually but *one arm*, and could not put on his shoes nor button his suspenders. Of this rape it is not pretended she made any sort of complaint, but went about with her ravisher in a sort of a go-as-you-please fashion.

Now, as to the second offense with which the *defendant* is charged. The prosecutrix testifies that : "He gathered me around the arms—I tried to go away, and I tried to 'holler,' and he slapped his hands over my mouth. He drug me into a kind of a brush place right over the fence, there was a gap there was laid off, or just let down, there was a gap there," and there she states, the defendant ravished her.

Witnesses for the state described the *locus in quo* where the offense is alleged to have occurred, as "*tolerable thick brush*," where several panels of worm fence had slipped down, the lowest one being about two feet high; sprouts and weeds had grown up between the rails, and blackberry bushes were tolerably thick up to the gap. And Al. Baltzell, one of the witnesses who testified in behalf of the state, and who had visited and carefully examined the locality, and who was well acquainted with the prosecutrix and the defendant, stated as his opinion considering the size of the respective parties, that if the prosecutrix was resisting it would take a pretty hard pull to pull her through the blackberry patch over to the particular spot where the crime is said to have occurred. This opinion of the

witness was not objected to, and besides was competent
testimony, where the subject is one of so indefinite and
general a nature as not to be the subject of direct proof;
the opinions of witnesses are admissible.  *Greenwell v.
Crow*, 73 Mo. 638; *Eyerman v. Sheehan*, 52 Mo. 221;
*State v. Parker*, 96 Mo. 382; *State v. Knapp*, 45 N. H.
148.

Well, after this somewhat rough and thorny
experience of the prosecutrix, what occurs next? Does
the ravisher flee for it, as in duty bound he should have
done, according to the regulations prescribed for the
conduct of ravishers in all the old books? Nay, verily;
with infinite courtesy he accompanies his victim nearly
to Dug Patrick's house; for she distinctly testifies on her
direct examination :  "He took me back pretty near to
the house, where Tom or Dug one was; I don't know
which; as well as I can remember, he didn't go clear to
the house." Whether he politely raised his hat, also,
in parting salutation as he left her, does not appear; but
about that time defendant is seen by Al. Baltzell and
Dug Patrick coming by a route leading north and away
from Dug Patrick's house, and it was then six o'clock,
the sun settting on that date at 7:20.   She says further
that "Millie Patrick was at the house when I got to it.
* * *  I know Millie was there, am certain of that."
But she made no complaint to her, nor does it appear,
though so recently dragged through the brush and
briers and over the fence some forty or fifty feet, that
her clothing was disordered or torn, her person scratched
or showing marks of violence, nor did she seem at all
agitated, nor give any signs or signals such as would
naturally be expected from a woman so foully wronged.
Nor did she make any complaint to Millie nor to her
brother Ben, whom she saw, as she says, " after we got
back from the blackberry patch;" "sun not very
high." These facts furnish their own conclusive com-
mentary.  Unless all tokens of a rape having been
committed fail, there was none perpetrated here.

On this point, MAXWELL, C. J., in *Mathews v. State, supra*, very pertinently observes: "The law, therefore, as evidence that the act was committed against her will, requires the prosecutrix to use all the means in her power to prevent the consummation of the act. If the act is committed with force and against her will, there is a great probability that some marks will be left upon her person or clothing, or both, as evidence of the struggle; and, if she make complaint at the first opportunity, these facts tend to corroborate her testimony that the offense was committed by some one. If no marks are left upon the person or clothing, and no complaint is made at the first opportunity, a doubt is thrown upon the whole charge, and unless the testimony of the prosecutrix is corroborated on material points, where the accused testifies as a witness on his own behalf and denies the charge, the testimony of the prosecutrix alone is not sufficient to warrant a conviction."

But look further into the testimony; her brother Ben offers to take her over to her uncle George Coons', but she tells him that "they had got her a way to go, and was going to take her up there," meaning thereby the Patricks. Now, this conversation occurred within less than an hour after her second ravishment, according to her story. That night, or a large portion of it, she spent with her last ravisher and shared with him her virtuous couch in the field, and then on Sunday night he takes her, according to promise, to her uncle George's, arriving there on Monday afternoon. If the testimony of her aunt Sarah and her daughter Lizzie are worthy of belief, the prosecutrix invited the defendant into the house, introduced him to her aunt and ate and talked with him at the same table, and after dinner her cousin Lizzie played for them on the organ and sang, while the recently arrived couple talked in a friendly manner, and when the defendant went out to get his horse the prosecutrix said she had something

to tell him, and went out to his buggy at the gate and talked to him, when he bade them all good bye and drove off.

On the next day, Tuesday, the prosecutrix became desirous of communicating with the defendant and his brother Tom, and so she besought her sister Maggie to write a couple of letters to them; but upon her sister's, who had arrived the evening before, stating she "could'nt write good," the prosecutrix then asked her cousin to write the letters, which she did, the first one being for, and addressed to, the defendant and said as follows:

"*Dear Charley,*

"I am well; hope this will find you the same; my cousin and I are having a nice time. My sister came up yesterday evening; going to stay until Wednesday evening. I wish you could see her; she is prettier than when she staid with Will and I, for Will nearly starved her to death. I am staying at my uncle George's. Well, I didn't go back to Will like you said I would. I told Will I got me a divorce. He fell off the chair, took out his knife and was going to cut his throat, like a fool. Come down some Sunday and stay all day. Write soon.          Yours truly,

"ANNIE COONS."

The one to Tom was of similar import and written on the same sheet and both put in an envelope, addressed to Charlie Patrick, Forest Springs, Missouri, a place to which he had gone or did go in two or three days after he left, but the prosecutrix having no stamp to put on it, or chance to mail it, it was placed in a book, where the aunt afterwards discovered it, and caused it to be destroyed.

This matter about the letters is testified to by her aunt, her cousin Lizzie and by her sister Maggie, a girl of some fourteen years of age. Her sister also testified that on the next day after her arrival the prosecutrix

told her, "Charley Patrick and I are going to run off
together, and we want you to go with us, and we will
get you lots of presents."

On the way over to her uncle's she and defendant
stopped near the house of Warren Scott, early Monday
morning, and while the defendant went to the house for
some provisions for her, she told Scott, "I and Charley
are running off; you needn't say anything about it."

Dr. Haycraft, who had known the prosecutrix and
her husband since they were children, testified:
"Reside at Steffenville, Lewis county, Missouri. Am a
physician and surgeon. Heard of the difficulty last
summer between Charley Patrick and Annie K. Botts.
After I heard of it I was at Mr. George Coons'. Had
conversation there with Annie. I said to her, 'Why did
you not come home with Ben Coons? She said, 'I didn't
have to.' I said to her, 'Of course, you didn't have to,
but I think you ought to have come with your brother
rather than your seducer.' She said to me, 'I promised
Charley to come with him, and I didn't want to disap-
point him.'"

. Laughlin testified that he had met the prosecutrix
that fall at her uncle George's, and "She told me a little
bit about her troubles in Lewis county. Ed. Coons, a
son of old gentleman Coons, was present. She made
this statement on that occasion, 'I have parted from
my husband; I wouldn't live with him again to save his
life.' To which I replied, 'Good God, I didn't know
you were married,' to which she replied, 'O yes, I have
been, but I like the Patrick boys better than I do Bill
Botts.'"

Another aunt of prosecutrix, Mrs. Orton, sister of
her father, testified: "Annie K. Botts asked Mrs.
Coons if she had been subpœnaed to come to Monti-
cello. She said she had not. Annie said, 'I dread the
time when I will have to go to Monticello, but I will do
anything to set the Patrick boys free,—they are not
guilty.' I have been at Mr. George Coons' two weeks.

Annie was at John Coons' at the time of the conversation. I went to see my brother because he was sick. They call it ten miles from George Coons' to John Coons'." Mrs. Coons asked her also if she would like to die, she said, "I want to die and not to go to Monticello. I will do anything in the world to clear the Patrick boys.'"

When the husband of the prosecutrix arrived at her uncle's she denied that either the defendant or his brother had ever mistreated her, but claimed that Bill, her husband, was jealous and had done so, told him she wouldn't live with him; that she loved another man better than him; she never did love him. She also admitted having kissed " Charley;" whereupon " Bill" said, " She has kissed him more than once," and she did not deny it. To these facts Mrs. Coons testified. It is true Ben Coons attempts to impeach his aunt and uncle at whose table he had broken bread, and in whose beds he had slept, by testifying to their willingness to testify for money; but it seems he himself was successfully impeached by some four witnesses. And besides, if this conversation between the prosecutrix and her husband did not occur, it would have been very easy to have brought Bill Botts, the husband, to have testified to the contrary; but though he was at court this was not done, and so Mrs. Coons' version of what then occurred must be held correct.

The prosecutrix also told her uncle George, so he testified, that she liked Charley Patrick better than Will Botts, and when he asked her, " Why do you prosecute these boys ?" she said she had to, " Charley Patrick had gone back on her, and her husband wouldn't live with her."

The foregoing excerpts from this exceedingly voluminous record might be greatly multiplied; they are but types of the rest and abundantly establish the absolute insufficiency of the evidence in this cause.

After reading this record, no hesitancy is felt in saying that it would be a libel on jury trials to let this

verdict stand.   In my opinion the judgment should be reversed and the defendant discharged.

GANTT, J., concurs in all that is said.   BRACE, J., concurs in paragraphs 2, 3 and 5, and in the result. MACFARLANE, J., in paragraphs 1, 2, 3 and 5.   BLACK, J., in paragraphs 2 and 3, and THOMAS, J., doth the like. BARCLAY, J., absent.

THOMAS, J. ( *dissenting* ).—I will note my reasons for not concurring in paragraphs 1, 4 and 5 of the foregoing opinion.

I.   I think the conversations between the prosecutrix and James, Millie and Tom Patrick, on Friday afternoon, July 19, 1889 were admissible even to prove the main issue, and certainly they were admissible as tending to explain Annie's conduct.   They were admissible to prove the issue upon the ground that, in my opinion, a conspiracy is clearly established between Charlie, Dug, Millie, Jim and Tom Patrick, to get rid of the prosecutrix and to suppress her testimony.   It is true some of these conversations occurred the day before the alleged rape, but these former attempts on the part of defendant to ravish her were competent evidence.   *People v. O'Sullivan.* 104 N. Y. 481, and cases cited.   And the defendant had a right to dispute and disprove them.   Hence the truth of the attempted rape on Monday, July 15, was an issuable fact.

But it is not necessary to put the admissibility of these acts and conversations upon the theory of a conspiracy, nor did the trial court admit them on that theory, but they were admitted solely to affect the standing of Annie as a witness ; and for this purpose I have no doubt whatever they were competent without regard to whether there was a conspiracy or not, or whether defendant authorized them to approach Annie to suppress her testimony.   There was no objection at the trial, nor was any urged here, to the admissibility of the conduct and acts of Annie,

Millie, Jim and Tom ; the objection going only to the conversations they had with Annie when defendant was not present.   If the conduct and acts of these parties, in the absence of defendant, are admissible, then their conversations, in connection with her conduct and acts, are admissible in order to characterize and explain such conduct and acts.   What is said in connection with an act must go in evidence with the act, or it could not be understood.   It is like a question and answer going in evidence together.   A third party asks defendant a question, and the latter answers.   Could it be said that the answer was competent, but the question was hearsay, because a third party had asked it ?  We have nothing to do with the sufficiency of her explanation.   That is for the jury.   I hold that her conduct should go to the jury, with the explanation, and then the jury must give her testimony such weight, viewed in the light of the explanation and the other circumstances in evidence as accords with their judgment.   The conduct, acts and conversations of all these parties are competent evidence as a part of the *res gestœ*, and no error was committed in admitting them.

II.   I regard instructions, numbered 4, 5 and 6, asked by defendant and refused by the court, as commentaries on the weight of the evidence of the prosecutrix, and cannot be supported on principle or authority. As an abstract proposition, I concede all that is said on this subject in the opinion of the court ; but I deny the right or authority of the trial judge to tell a jury, in a case like this, that, if the prosecutrix " concealed the alleged rape until Friday after the alleged commission of the alleged rape upon her, then the law presumes such concealment inconsistent with defendant's guilt ; " or that, "if she continued friendly intercourse with defendant, then the law presumes such friendly intercourse inconsistent with defendant's guilt, and renders her charge of rape against him improbable."   The court

is here asked to fix the time within which the prosecu-
trix in a rape case shall disclose the offense, and then,
without any reference to the concurring circumstances,
is asked to declare that in this case the law presumed
that her concealment of the crime for a week was incon-
sistent with defendant's guilt, and that the law presumed,
if she remained on friendly terms with defendant, that
her story was improbable. The law fixes no time within
which a prosecutrix shall disclose the crime. The rea-
soning of the court in the opinion filed in this case is at
fault in this. Quotations are made from Hale's Pleas of
the Crown and from Greenleaf on Evidence, where these
authors are discussing the admissibility of evidence;
and, because they say that the failure of the prosecutrix
to make complaint for any considerable length of time
after she has had an opportunity to disclose the crime,
carries a presumption that her story is false or feigned,
and is, therefore, competent evidence, the conclusion is
reached that the court ought not only to decide that
the fact is competent evidence, but then go on and tell
the jury how much weight they ought to give it. As
illustrative of this point, I will quote a single sentence
from Thompson on Trials : " The experienced judge
and practitioner must have discovered, in many cases,
that the argumentative deductions of text-writers on the
law of evidence, however appropriate in themselves,
cannot be repeated to juries in the form of instructions,
without leading them to a misunderstanding of their
duties, or trenching upon their exclusive province."
Section 2413. This language may very well be applied
to "the argumentative deductions" of judges, also,
in their opinions in particular cases. It is the duty of
the court to determine whether a fact proposed to be
proved has any probative force, and that of the jury to
determine how much probative force it has. "The law
is not a fixed science. It deals with men and their
affairs in the concrete, and it ought to be so adminis-
tered as to arrive at just and sensible results." This

language of the court in this case I heartily indorse; and upon that proposition I hold the court had no right to tell the jury that the law presumed the concealment of this alleged crime by this prosecutrix under the circumstances of this case for a week was inconsistent with defendant's guilt. The fact that she concealed the crime for a week after she had an opportunity to disclose it is a circumstance against her story, I admit; but how much weight it should have in this case, viewed in the light of all the facts and circumstances in evidence, is, in my opinion, for the jury, and not the court.

The same may be said of her remaining on friendly terms with the defendant after the alleged crime. Did she explain satisfactorily why she concealed the crime, and remained friendly with the defendant, after she says he ravished her? Who shall answer this question,—the judge or jury? I answer, the jury. The court instructed in this case, as in all cases, that the jurors are the sole judges of the weight of the evidence and the credibility of the witnesses; and then to add that the law presumes that the testimony of one witness is improbable seems to me to be inconsistent. I can understand very well how the court can take a case from the jury because there is no testimony to authorize a verdict, but I do not see how a court can tell a jury that they are the sole judges of the weight of the evidence and the credibility of the witnesses, and then single out of a concrete case a fact, and tell the jury how much or little weight ought to be given that fact in the given case. Evidence is admitted because it has probative force. For the court to admit a fact as evidence, and then tell the jury that it has probative force, is a work of supererogation. If the court begins this, where shall the line be drawn? It won't do to single out a few facts in a case and tell the jury how much or how little probative force they have, thus giving such facts a prominence they do not deserve; and if you call the attention of the jury to every fact in the case, with its

relation to all the other facts, the trial courts in Missouri would never get through with their business. This was practicable under the common-law system, where the judge summed up the evidence orally, and gave the jury his opinion of the different parts of the evidence in their relation to the whole, leaving it finally for the jury to find the facts ; but that would be utterly impracticable under our system, where the courts must instruct in writing. But our code has, in my opinion, prohibited this.

The majority opinion refers to numerous cases where it has been held that the court was justified in instructing that certain presumptions might arise from a proved fact or a group of proved facts. This, I concede. But the rule is, and has been for a long time, that the court "shall not * * * sum up or comment upon the evidence, or charge the jury as to matter of fact." R. S. 1889, sec. 4220. In the transition, however, from the common-law practice to the code practice, a part of the old became ingrafted upon the new, by incorporating into the latter the cases named by my brothers, where this court has held that instructions in regard to particular facts are proper ; but I regard all these as exceptions to the general rule I have named. I am opposed to making any more exceptions, or to enlarging the rule so as to make more exceptions probable. Some wise philosopher has said that the "opinion of yesterday becomes the precedent of to-day, and will be doctrine to-morrow." As the approved instructions in regard to the presumption arising from flight, the recent possession of stolen property, etc., are made, by the learned judge who wrote the opinion in this case, precedents to justify the instructions I have quoted above, so the approval of these instructions to-day will be made precedents to let in another exception to-morrow, and so on *ad infinitum*. When the law raises a presumption, it is proper for the court to inform the jury fully in regard to it ; but, where it is simply

a presumption of fact, the trial courts in our state have no authority to invade the province of the jury, and tell them how little or how much probative force a given fact, or a given group of facts shall have. Is not the presumption arising from the concealment of an alleged rape by the prosecutrix a presumption of fact? Does the law declare that a woman has not been ravished if she failed to disclose the crime for a week or a day? No. This is not claimed. Annie K. Botts may have remained friendly with the defendant after her alleged injury, and concealed the affair for a week, and still defendant be guilty.

This is not all the evidence in the case, however. There are several hundred pages more of it. This conduct of hers, if a fact in this case, must be judged by all the other evidence in the case. Is her story probable? Who has the right in this concrete case to answer that question? I reply that the jurors are the sole judges of her credibility. They must judge her conduct in its relation to all the other actors and witnesses in the case. If the judge should instruct the jury in regard to the weight to be given to her testimony, why not tell the jury all the concurring circumstances that corroborate or discredit her, and then, in a minute way, show the relation of each fact to all the other facts, and how much weight ought to be given to each fact in relation to the other facts? In other words, make a lengthy argument to the jury, showing why they ought to disbelieve her, and then, on the other hand, why they ought to believe her, and then wind up by saying to the jury: "Gentlemen, I have given you my opinion in regard to the testimony of this witness, and in conclusion I will say to you that you are the sole judges of her credibility." This the common-law judges did, but it is conceded that our code has abolished that mode of instructing juries. If the court had the right to single out the facts named in the case at bar, and instruct the jury what probative force they had, I can see no reason why

the judge cannot and ought not to single out every fact in every case, and instruct as to its probative force. There is no place to stop that I can conceive of. There are two classes of instructions of this nature. One is where the court tells the jury that they may consider a fact ( naming it ) in making up their verdict; another is where the court tells the jury what probative force to give to a stated fact. The former is vicious enough in practice, and the other is still more so. The court admits a fact as evidence, and tells the jury they may consider that fact in making up their verdict. Of course they may. If not, why admit it in evidence? It has a marked effect on the jurors, however. Under our system, where the judge is not allowed to sum up, the jurors, as a rule, catch every word that falls from his lips, and seize upon the written instructions, and scrutinize them closely, to learn what his opinion of the facts is ; and when the judge singles out a witness, and tells them that they may consider his interest, his conduct, his acts, in determining the weight they will give his testimony, he produces the impression that he is suspicious, at least, of the truthfulness of such witness. And in practice I have often seen such instructions used to lead "juries to a misunderstanding of their duties." I hold this kind of instructions goes to the extreme limit of the judge's authority in regard to the weight of the evidence. And, to conclude the discussion of this phase of the question, I will quote the language of the supreme court of Alabama in *Grimes v. State*, 63 Ala. 166, as follows : "There are so many considerations affecting the credibility of a witness that it is far better and more promotive of the ends of justice to leave the jury free in each case to determine in view of all the evidence, the witnesses whom they will credit, or the parts of the evidence of any witness which they will credit, and which they will discredit, than to fetter their judgment by inflexible rules which may compel them to conclusions they would not otherwise reach."

I do not desire to be understood by anything I have said as indicating a desire to depart from the exceptions that have been made in this state to the general rule in regard to summing up the evidence or commenting on the facts, but I desire to be understood as being opposed to making any more exceptions, or modifying the general rule so as to make further exceptions probable. My conclusion on this point is that the instructions which were prayed for by the defendant, are not supported upon principle.

And I hold that they are not supported by authority, especially in this state. I have examined the authorities referred to by the court in this case as sustaining the theory that the trial court, in a rape case, ought to tell the jury that the failure of the prosecutrix to make known the crime for a considerable length of time, and her remaining on friendly terms with the defendant after the alleged rape, raised a presumption of law against the truthfulness of her story, and I confess I do not find in them the doctrine contended for.

In *State v. Wilson*, 91 Mo. 410, the alleged ravisher worked for the father of the prosecutrix, and lived in his house. He remained there three or four days after the alleged rape. The prosecutrix was sixteen or seventeen years old, and lived at home with her father and mother. She did not make complaint for five months, and then only when her father forced her, she being pregnant. The defendant, after he left her father's employment, worked for a neighbor, who lived within one hundred and twenty-five yards of her, and she saw him frequently. The reason she gave for not telling it sooner was that she was afraid defendant would kill her, as he had threatened to do if she told it. The defendant admitted the intercourse, but alleged that the girl consented. The defendant did not even ask for an instruction that the law presumed the

prosecutrix's story improbable, but simply asked the court to instruct the jury that "her failure to complain within a reasonable time, and the fact that pregnancy followed a single sexual connection, are legitimate subjects of inquiry in determining whether there was force on the part of defendant, or consent to the intercourse" by the prosecutrix. This court held this instruction ought to have been given without modification. There is a wide difference in saying that a failure to complain within a reasonable time is a legitimate subject of inquiry in determining whether there was force used, as was authorized in the *Wilson case*, and saying to the jury that a failure to make complaint for a week raised a presumption of law that the story was improbable, as is directed to be done in the case at bar.

In *State v. Witten*, 100 Mo. 525, the prosecutrix had intercourse with her alleged ravisher on frequent occasions for a year after the alleged crime, and she did not inform anyone that she claimed she had been ravished for more than a year afterwards, and not then till she discovered she was *en ceinte*. The evidence on behalf of defendant was an admission of improper relations with the girl as far back as 1884 ( the alleged rape having been committed after the harvest of 1885), but the denial of the use of force on any occasion. The court refused to give the following instruction prayed for by defendant: "If the jury believe from the evidence that, at the time the offense is alleged to have been committed, the prosecuting witness made no outcry, and did not, as soon as an opportunity offered, complain of the offense to others, but concealed it for a considerable length of time thereafter, then the jury should take this circumstance into consideration, with all the other evidence, in determining the guilt or innocence of the defendant, and whether a rape in fact was committed or not." This court reversed the case because of the refusal of the court below to

give this instruction. Judge BLACK, who delivered the opinion of the court, speaking of this error, said: "The inference to be drawn from the concealment of the alleged outrage is, of course, one of fact; and it may be said the jury should be left to make such inference from that and the other facts in the case as accords with their judgment. As a general rule, it is an usurpation of the functions of a jury for the judge to tell them what conclusions or presumptions of fact they should draw from one or more given facts ( *Chouquette v. Barada*, 28 Mo. 496 ; *Jones v. Jones*, 57 Mo. 138) ; but the refused instruction does not undertake to tell the jury what inference they should draw. They are only told to take the circumstances recited, if true, into consideration in determining the question of the guilt or innocence of the defendant. Such an instruction is in no sense an invasion of the province of the jury." The instructions under discussion do the very thing condemned by the court in the *Witten case;* that is, they tell the jury what presumption they must draw from a certain fact, and to make it still more objectionable, they declare the law makes the presumptions. Judge BLACK says it is a usurpation to tell the jury what inference or presumption of fact they ought to draw from a given fact, but here the instructions tell the jury that the law presumes one thing from another. If waiting a week before making complaint raises a presumption of law that the story of the prosecutrix is improbable, ought not the failure to complain for a year and more make the presumption conclusive? Yet the court sent the *Witten case* back for new trial, with directions to leave it to the jury to say what inference they would draw from the failure to make complaint for that length of time.

I conclude, therefore, that, no matter what may have been the ruling of the courts of other states, the instructions under discussion are not supported by the

adjudged cases in this state; and hold that the trial court committed no error in refusing them, and that the tenth instruction, given at the instance of defendant, was all he was entitled to.

I think the complaints made by the prosecutrix the Saturday after the alleged rape were admissible to corroborate her evidence in this case. The law fixes no time within which she must make complaint. "There is no iron rule on the subject." Each case must be judged by its own circumstances. Mr. Wharton says: "Delay, when accounted for, does not exclude such statements." Sec. 566, *supra*. And the authorities he refers to to sustain this proposition are: *State v. Knapp*, 45 N. H. 148; *State v. Niles*, 47 Vt. 82; *State v. Marshall*, Phil. (N. C.) 49, and *State v. Peter*, 8 Jones (N. C.) 19.

In *State v. Knapp* the prosecutrix did not tell her mother of the crime till a week or ten days after its alleged commission, and the reason she gave for not telling it sooner was her parents were out of health, and she feared the effect upon them. The trial court permitted witnesses to testify as to this complaint at the instance of the state as corroborative of her testimony. The supreme court of New Hampshire said: "The grounds upon which is received the proof of complaints by the prosecutrix, made soon after the injury, are that they are corroborative of her testimony on the stand, and tend to repel the presumption that would arise from the absence of such complaints; for it is laid down very generally that, if such complaints are not made soon or within a reasonable time after the injury, or without any inconsistent delay, it is a strong though not conclusive presumption against the truth of the charge. It is equally well settled, also, that the delay to make complaint may be explained by showing it was caused by threats or undue influence of the prisoner. It is in truth a question purely of fact, to be

determined by the jury; and how much the delay in making complaint ought to weigh against the prosecution must depend upon the circumstances of each particular case. * * * In the case now before us, the court could not say that the reason assigned for not communicating the fact of the injury to her parents would not properly tend to repel the presumption arising from the delay, and we, therefore, think it was rightfully received." The court in other parts of the opinion go on to show that this kind of testimony is not admitted as part of the res gestæ, but as affecting the credibility of the prosecutrix.

In *State v. Niles*, 47 Vt. 82, the prosecutrix did not make complaint for two months. This complaint was introduced in evidence over the objection of defendant. The supreme court on this point said : "Evidence of this character is only admissible as confirmatory of the evidence given by the party upon whom the rape is alleged to have been committed. It was ruled by HOLROYD, J., in *Clarke's case*, 2 Starkie, 241, that in a prosecution for rape the fact of a woman's having made complaint *soon* after the assault took place is evidence. This rule has been embodied into all the text-books upon evidence ; but it has never been understood that mere lapse of time could be made the test upon which the admissibility of such evidence depended. The time that intervenes between the commission of the crime and the making of the complaint is a subject for the jury to consider in passing upon the question of the weight that should be given to the evidence ; so that this objection was not well taken."

In *State v. Marshall*, Phil. (N. C.) 49, the girl who claimed to have been ravished passed by her aunt's on her way home after the alleged rape, and saw her, but did not tell her ; but told her mother when she got home. The state was allowed to prove the statement made by the prosecutrix as corroborative of her

evidence, and the supreme court of North Carolina held it no error. In *State v. Peter*, 8 Jones ( N. C.) 19, the prosecutrix did not make complaint for two weeks, and her statement was admitted in evidence by the state. The supreme court of North Carolina held it competent. In this case the trial court charged the jury that they might consider the lapse of time between the commission of the crime and the complaint with other facts ( naming them ), in determining the credibility of the prosecutrix. This portion of the charge was excepted to on the ground that the judge ought to have gone further, and told the jury that her not making an earlier disclosure raised a presumption of falsehood, to be acted on by the jury in the absence of any proof to rebut it. I will quote from the opinion of the supreme court, not only in support of the point now under discussion, but as bearing specially upon the question as to the instructions which this court holds in this case ought to be given. Says the court: "It is not *a rule of law* that silence, under such circumstances, raises a presumption that the witness has sworn falsely. The passages in the books, to which reference was made on the argument, use the word 'presumption,' not as a rule of a law, but an inference of fact, and treat of *silence* as a circumstance tending strongly to impeach the credibility of the witness, on the ground that a forcible violation of her person so outrages the female instinct that a woman not only will make an outcry for aid at the time, but will instantly and voluntarily, after its perpetration, seek some one to whom she can make known the injury, and give vent to her feelings. The want of this demonstration of feeling or 'involuntary outburst' is treated of. as a circumstance tending to show *consent* on her part; but it is nowhere held that this female instinct is so strong and unerring as to have been made the foundation of a rule of law, as distinguished from a rule in respect to

evidence, and the weight to which it is entitled, which is a matter for the jury." In *State v. De Wolf*, 8 Conn. 93, the complaint was not made for a year, and in *State v. Byrne*, 47 Conn. 465, it was not made for a year and a half; yet in both cases the excuses given for the delay were held to justify the admission of the complaint in evidence as corroborative of the testimony of the woman alleged to have been ravished.

In the case at bar I think the prosecuting witness gave satisfactory reasons for not disclosing this crime sooner.

III. I do not concur in the opinion that the evidence did not warrant the submission of the case to the jury, but the record is too voluminous to go into details. Suffice it to say that I do not concur in the statement of the facts or the inferences sought to be drawn from the facts as given in the opinion of the court. I am firmly convinced after a careful study of the record that there was ample evidence to go to the jury, and I hold that the order made at the last term of this court, reversing and remanding this cause for new trial, was the proper order to make, and it is too late after the lapse of the term to set aside such order.

BLACK, J., concurs with me in these views.