## The State v. Kelly et al., Appellants.

1.  **Recent Possession of Stolen Property**: PRESUMPTION OF GUILT. The presumption of guilt growing out of the recent possession of stolen property is a presumption of law, and, in the absence of other rebutting evidence, must be met by proof on the part of the accused accounting for his possession in a manner consistent with his innocence, or it will become conclusive against him. It is not a mere presumption of fact, to be weighed with other evidence in the case.

2.  **Practice**: INSTRUCTIONS. An objection that that part of the instructions in this case which made most strongly against defendant was in print, while the rest was in writing; *Held*, to be frivolous.

3.  ——— : ———. It is proper to instruct the jury that it is their province to pass upon the credibility of witnesses.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

This was an indictment for larceny, against James Kelly and Henry Johnson. The evidence given at the trial tended to prove that a trunk and contents had been stolen during the afternoon from premises used as a saloon and public boarding house, frequented by a great many people; that on the evening of the same day, two police officers arrested the defendants on the levee at a ferry landing, with the trunk in their possession; that upon being questioned by the officers, they at once, and without hesitation, stated that they had been met but a few minutes before upon Levee street by an individual whom they accurately described by size, color of hair, etc., and that he had engaged them to bring the trunk for him down to the ferry landing, and that said person had "treated" them to beer in a certain saloon, which they pointed out, and desired that the officers go there with them to see if said person was still there; that defendants thought the said party intended following after them to the ferry landing, and they, only a few moments prior to the arrest, had put the trunk down, and were awaiting the coming of the pretended

owner; that the officers, by going to the said saloon with defendants, learned that a party answering the description defendants had given, had been at the saloon and "treated" the defendants to beer, and had afterward disappeared.

The court, of its own motion, gave the following instructions : (1) On the one hand, the law presumes in this, as in all other criminal trials, that the defendants are innocent of the crime charged against them, and allows this presumption to continue until overcome by evidence which proves their guilt; and on the other hand, *where property has been stolen, and recently thereafter the same property, or any part thereof, is found in the possession of another, such person is presumed to be the thief, and if he fails to account for his possession of such property, in a manner consistent with his innocence, this presumption becomes conclusive against him.* (2) You are the sole judges of the credibility of witnesses who have taken the stand and testified before you. With this the court has nothing to do, and if you believe that any witness is unworthy of credit, or that any one of them has willfully sworn falsely to any material fact in the cause, you are at liberty, if you think proper so to do, to disregard the whole or any part of such witness' testimony.

*Thomas B. Harvey* for appellants.

The court erred in authorizing the arbitrary rejection of testimony by the jury. Proffatt on Jury Trial, § 362; Thompson Charging the Jury, § 38; *Evans v. George,* 80 Ill. 51; *Robertson v. Dodge,* 28 Ill. 161 ; *Crawford v. State,* 44 Ala. 382; *Wilcox v. State,* 3 Heisk. (Tenn.) 110. The court, by printing that portion of the instructions which made most strongly against the defendants, (the part italicized in this report,) gave undue emphasis and prominence to that part. Clear, punctuated print in the midst of ordinary writing, undoubtedly arrests and holds the attention. This was error. Thompson Charging the Jury, §§ 55, 72; *Reiger v. Davis,* 67 N. C. 185; *State v. Simmons,* 6 Jones L.

21. The instruction says "if he fails to account for his possession of such property in a manner consistent with his innocence," etc. This language is certainly very uncertain in its meaning. It would, in view of the fact that defendants are permitted to testify, be quite natural for a jury unacquainted with the law, to construe this phraseology to imply that the defendant himself must explain, and that nothing else could do so. Again, the jury would naturally think the phrase "in a manner" referred to the manner or deportment of the defendants when on the witness stand. It is error to give an instruction so liable to misconstruction. 3 Graham & Wat. New Trials, 774; Thompson Charging the Jury, § 68; Proffatt Jury Trial, § 338. There is no presumption of law that the possessor of recently stolen property is the thief thereof. Thompson Charging the Jury, §§ 40, 44; Wharton Crim. Ev., § 758; *State v. Wingo*, 66 Mo. 183; *Chaffee v. U. S.*, 18 Wall. 516; *State v. Foster*, 61 Mo. 549; *State v. Lane*, 64 Mo. 323; 3 Greenleaf Ev., (13 Ed.) § 31; 2 Bishop Crim. Prac., (3 Ed.) §§ 743, 745; *Allison v. State*, 42 Ind. 354; *People v. Rodundo*, 44 Cal. 538; *Watkins v. State*, 2 Tex. App. 73; *Stover v. People*, 56 N. Y. 315; *Howard v. State*, 50 Ind. 190; *Com. v. Bell*, 102 Mass. 163; *Gablick v. People*, 40 Mich. 292; *People v. Chambers*, 18 Cal. 383; *Ingalls v. State*, 48 Wis. 647; *s. c.*, 10 Cent. L. J. 317; *State v. Hodge*, 50 N. H. 510; *Fackler v. Chapman*, 20 Mo. 249; *State v. Bruin*, 34 Mo. 537. In *State v. Robbins*, 65 Mo. 444, the error in the instruction similar to the one given in this case, was obviated by another instruction. But if the presumption is raised it can be explained and rebutted otherwise than by "defendant's accounting for his possession in a manner," etc. Proof of good character will rebut. This was given, but under the instruction the jury could not consider it.

*D. H. McIntyre*, Attorney General, for the State.

There was no error in the instruction as to requiring

defendant to account for the possession, since that was the only defense attempted. *State v. Bruin*, 34 Mo. 537. As character, in a legal sense, is the estimate of an individual by the community and not his real qualities as conceived by the witness, (Whar. Ev., § 58,) it is not plain how a witness defendant can go upon the stand and swear himself a good character. The character entitled to be proved must be such as would make it unlikely that he would commit the offense charged; *i. e.*, to larceny a character for honesty may be proved. It is equally difficult to understand how the mere reiteration by defendant of a statement made by him can be regarded as confirmatory evidence. If the possession of recently stolen goods is not explained by direct evidence or in some satisfactory way, it is taken as conclusive that defendant committed the theft. *State v. Gray*, 37 Mo. 463; *State v. Creson*, 38 Mo. 372; Greenleaf Ev., (12 Ed.) § 34; *State v. Barker*, 64 Mo. 282.

## I.

SHERWOOD, C. J.—Nothing is more familiar to the profession than the division of legal presumptions into two classes; conclusive and disputable. The first, as for instance, that no one is ignorant of the law, that a male infant under fourteen years of age is incapable of committing a certain offense; that a female infant under the age of ten years is incapable of consenting to sexual congress; that an infant under the age of seven years is incapable of committing a felony; and that in certain circumstances, the issue of a marriage is conclusively presumed legitimate. 1 Greenleaf Ev., § 28; 3 Greenleaf Ev., §§ 4, 7; 2 Best on Ev., §§ 336, 338. The disputable presumptions exist in infinite variety, and the list, consequently, is far more enlarged than the former class, *ex. gr.*: That the law presumes every man innocent; that malice is to be presumed from the use of a deadly weapon; from the sale or publication of libelous matter; that guilt is to be presumed

from the suppression, destruction or fabrication of evidence. Wills Circ. Ev., 91; 1 Greenleaf Ev., § 37. That a woman, save in cases of treason or murder, is presumed, when with her husband, to act under his coercion, and that a receipt of the last quarter's rent is presumptive evidence of payment of all rent previously accrued, etc., etc. 1 Greenleaf Ev., § 38. The courts, in the daily routine of their duties, are accustomed to instruct juries as to both classes of presumptions; as to whether the triers of the fact shall regard the presumption of such a character as to forbid the fact presumed from being gainsaid or denied, or as to whether those triers shall regard the presumption of a disputable nature, and, therefore, capable of being overcome by countervailing evidence, or if not corroborated or rebutted, of affording by itself sufficient basis for a verdict.

No one, it seems, has ever doubted the propriety of the disputable presumptions already noticed, respecting innocence; malice from the use of a deadly weapon; from libelous sale or publication, or the presumption arising in regard to coercion, or the destruction or suppression of evidence, or that juries should give, and be instructed to give to such presumptions their ancient and customary effect. But in relation to an equally familiar and ancient presumption in reference to the recent possession of stolen goods, a new departure has been taken, and a new doctrine proclaimed. We are now gravely informed that "presumptions of law are conclusive." The desired deduction from this premise is, that inasmuch as the alleged presumption relative to the guilty possession of goods is not conclusive, but capable of rebuttal, that, therefore, it is not a presumption of law at all, but dwindles into a mere "inference of fact," to be weighed by the jury and held in no higher estimate than any other like inference.

All disputable presumptions had their origin in the common observations and experience of mankind that one fact is usually the concomitant of another fact; (1 Greenleaf Ev., § 33;) that the use of a deadly weapon being shown,

malice is commonly found to be the concomitant, though concealed fact, which prompted such use. But malice does not universally attend the use of a deadly weapon; therefore, the law will not conclusively presume malice from such use, but will, nevertheless, presume that the usual accompanying fact, malice, was incident to that use, until the contrary is made to appear. To say then, in such a case, that malice is not to be presumed, but is only to be deduced by the jury as an "inference of fact," like any other similar inference, is to substitute for that which the common experience of mankind extending from a remote period down to the present, has generally found to be true, for the sometimes hasty and oftentimes crude inferences of guilt or innocence which each petit jury may draw during the progress of each particular trial. It would seem obvious that the wisdom of ages, the result of the " experience of common life," as expressed in the different disputable presumptions, is entitled to greater and graver consideration than would thus be accorded to it. Besides, if you banish one disputable presumption, you of necessity banish all, of whatsoever nature and however numerous, by the same edict. Presumptions of malice will go by the board, along with presumptions of innocence. One disputable presumption being abolished, all others, whether relating to civil or criminal trials, must logically follow in its wake; for with no show of reason can it be claimed that one disputable presumption may and should be exscinded, while all others similar in their evidential incidents and results are retained in all their pristine vigor. He would be indeed a bold innovator, and one who would greatly impede the uniform administration of public justice, who should undertake thus to mar the fair proportions of the law of evidence by lopping off every species of inconclusive presumptions which the experience of ages has accumulated and sanctioned. No reason is discovered for departing, in this particular, from the ancient pathways of the law, either as respects the general doctrine of disputable presumptions, or in ref-

erence to that one to which the instruction complained of gives recognition.

The rule of evidence enunciated in that instruction has been frequently, and quite recently recognized in this State. *State v. Robbins*, 65 Mo. 443, and cases cited. Whether the instruction was properly given in the present instance, it is now proper to inquire. A writer of eminence says: "Since the desire of dishonest gain is the impelling motive to theft and robbery, it naturally follows that the possession of the fruits of crime, recently after it has been committed, affords a strong and reasonable ground for the presumption that the party in whose possession they were found was the real offender, unless he can account for such possession in some way consistently with his innocence. The force of this presumption has been recognized from the earliest times; its foundation is the obvious consideration, that if the possession has been lawfully acquired, the party would be able, at least shortly after its acquisition, to give an account of the manner in which such possession was obtained, and his unwillingness or inability to afford such explanation, is justly regarded as amounting to strong self condemnatory evidence." Wills Circ. Ev., 64; 2 Best on Ev., § 321. It will thus be seen that the instruction on the single point of guilty possession finds ample support in the authorities.

And it is difficult to conceive how the jury could have been misled by the words, "if he fails to account for his possession of such property in a manner consistent with his innocence." That portion of the instruction makes no reference to the defendants, as individuals, or to their having testified in the cause, but merely states the abstract rule of law, applicable, as already seen, to all cases of possession of property recently stolen.

Nor is the instruction faulty because of its concluding words: "this presumption becomes conclusive against him." When, on the part of the State, the evidence shows that property recently stolen is found in the possession of

the accused, the law, from the facts proven, presumes the existence of the usually concomitant fact, *i. e.*, that the possessor is the thief; the case of the State is then made out, subject, however, to any explanatory or rebutting evidence which the accused may offer. When speaking of the presumption under discussion, a comparatively recent writer says: "Hence, it has become a rule of evidence that the possession of property which has been recently stolen, raises such a presumption of guilt against the possessor, as to throw on him the burden of showing how he came by it, or that he came honestly by it; and in the event of his failing to do so, to warrant the final inference or conclusive presumption of his being the real offender." Burrill Circ. Ev., 446. And when discussing the same point, a very profound writer remarks: "Not only is this presumption evidence of delinquency when coupled with other circumstances, but even when standing alone, it will in many cases raise a presumption of guilt sufficient to cast on the accused the *onus* of showing that he came honestly by the stolen property; and in default of his so doing, it will warrant the jury in convicting him as the thief." 1 Best on Ev., § 211.

In cases of this sort, the State, by reason of the presumption arising from the fact of possession, has adduced *prima facie* evidence of theft; and evidence of this description is said to be such as is sufficient to establish the fact, and if not rebutted, becomes so conclusive as to require a verdict in accordance therewith. *Kelly v. Jackson*, 6 Pet. 622; *United States v. Wiggins*, 14 Pet. 334; *Commonwealth v. McGorty*, 114 Mass. 299; 1 Greenleaf Ev., § 33 n. In instances like the present, the connection between the fact proven and the one presumed, "is so general and so nearly universal, that the law itself, without the aid of the jury, infers the one fact from the proved existence of the other, in the absence of all opposing evidence. In this mode the law defines the nature and amount of evidence which it deems sufficient to establish a *prima facie* case, and to throw

the burden of proof on the other party. 1 Greenleaf Ev., § 33. It is said by Chief Baron Gilbert that "when the fact itself cannot be proved, that which comes nearest to the proof of the fact is the proof of the circumstances that necessarily and usually attend such fact, and these are called presumptions and not proofs; for they stand instead of the proofs of the fact till the contrary be proved." Gilbert Ev., 157. And it is stated in a work from which we have heretofore quoted that: "It is, however, in general sufficient to prove a *prima facie* case; for as has been well remarked, imperfect proofs from which the accused might clear himself, and does not, become perfect." 2 Best Ev., § 346. And Mr. Starkie, on the same point, remarks: "In criminal cases, it is essential that the evidence should be of a conclusive nature. But here it is to be observed that it very frequently happens in criminal as well as in civil proceedings, that evidence which, in itself, is but inconclusive derives a conclusive quality from mere defect of proof on the part of the adversary or accused." Starkie Ev., 820. These quotations, which might be far more extensive, suffice to show that the objection being considered is unfounded; and that the cause was properly submitted to the triers of the fact to say whether the *prima facie* case, the presumption of law presented by the State, was overthrown, and those triers were properly instructed that if such presumption were not thus overthrown, it should prevail.

The assertion is made by counsel that "defendants testified to their own good character." We find no such testimony in the record. We do find, however, that each of defendants testified in his own behalf he had "never before been arrested or imprisoned under a criminal charge." Assuming the competency of a defendant in a criminal cause to testify to his own good character, the language quoted falls far short of the mark. Good character, or its synonym, reputation, is not to be established in this way. If there really had been evidence of good character introduced, the instruction would not have been sufficiently

comprehensive, because good character would neither "account for" nor "explain" the possession of property recently stolen, though it would certainly have a very important bearing in rebutting the presumption of guilt consequent on such possession. This point is discussed in *State v. Bruin*, 34 Mo. 537. Inasmuch, therefore, as the evidence offered for the, defense only went to the reasonableness of the account which the defendants gave of their possession of the property, it was unnecessary that the instruction should have been broader than that evidence.

## II.

As to a portion of the instruction being in print, and the residue in writing, the objection is too frivolous for comment.

## III.

Nor is the instruction objectionable because of telling the jury that it was their province to pass upon the credibility of the witnesses. Such instructions have been frequently sanctioned by this court. The judgment is affirmed. NORTON and RAY, JJ., concur; HOUGH and HENRY, JJ., dissent.