## THE STATE v. YERGER, *Appellant.*

1. **Criminal Law**: FORGERY IN SECOND DEGREE: INDICTMENT. An indictment for forgery in the second degree under Revised Statutes, section 1406, examined and approved.

2. ———— : ———— : ————. In an indictment for forgery, it is not necessary to expressly allege that the name charged to have been forged was affixed to the forged instrument, when the latter is set forth according to its tenor and shows such to be the fact.

3. ———— : FORGERY : TENOR : PURPORT. Where the tenor of the forged instrument is exact, and complete, and sufficiently gives the purport, the purporting clause may be rejected as surplusage.

4. **Forgery** : INDICTMENT : INTENT. It is not necessary to the validity of an indictment for forgery that it should charge an intent on the part of the defendant to defraud any particular person.

5. **Practice, Criminal** : PRESENCE OF DEFENDANT IN COURT DURING TRIAL. When the record in the appellate court shows that the defendant in a criminal cause was present at the commencement, or any other stage of the trial, it will be presumed, in the absence of evidence in the record to the contrary, that he was present during the whole trial. R. S., sec. 1891.

6. **Criminal Law** : FORGERY : EVIDENCE. An alleged forged instrument is properly admitted in evidence, where it is correctly described in the indictment, or set forth according to its tenor.

7. ———— : ———— : INDICTMENT. It is not necessary in an indictment for forging a check, to set out the indorsement thereon, as that is not charged to be forged and has nothing to do with the forged instrument

8. ———— : ———— : EVIDENCE : VENUE. The possession of a forged instrument, or the uttering of it by one in the county where the indictment is found, is strong evidence to show that the forgery of the instrument was committed by him in the same county.

*Appeal from Jackson Criminal Court.*—HON. H. P. WHITE, Judge.

AFFIRMED.

The indictment, omitting the formal part, is as follows : " Feloniously did forge, counterfeit and falsely make a certain false, forged and counterfeit check, purporting to be made by Plankington, Armour & Co., a fictitious firm, and the said check purporting to be drawn on the Bank of Kansas City, a banking corporation duly organized according to the laws of the state of Missouri, which said false, forged and counterfeit check is of the tenor following :

" $50.00                    KANSAS CITY, Mo., Sept. 19, 1883.
              "BANK OF KANSAS CITY

" Pay to E. M. YERGER..................... or bearer,
" Fifty.................................$\frac{00}{100}$ Dollars.
" No. ——                   PLANKINGTON, ARMOUR & Co.

" With intent then and there and thereby feloniously, to injure and defraud, against the peace and dignity of the state.

" And the grand jurors aforesaid, on their oaths aforesaid, do further say and present that E. M. Yerger, whose christian name is unknown to the jurors, at the county of Jackson, in the state of Missouri, on nineteenth day of September, 1883, a certain false, forged, and counterfeit check, purporting to be made by Plankington, Armour & Company, a fictitious firm, and purporting to be drawn on the Bank of Kansas City, a banking corporation duly organized under and by virtue of the laws of the state of Missouri, which said false, forged and counterfeit check is as follows :

" $50.00          KANSAS CITY, Mo., SEPT. 19, 1883.
                "BANK OF KANSAS CITY

"Pay to E. M. YERGER, ..................... or bearer,
"Fifty......................................$\frac{00}{100}$ Dollars.
"No. ——          PLANKINGTON, ARMOUR & Co.

"Feloniously did pass, utter, and publish as true to one John L. Lyons, with intent him, the said John L. Lyons, then and there and thereby to injure and defraud, he, the said E. M. Yerger, then and there well knowing the said check to be false, forged, and counterfeit, against the peace and dignity of the state."

*Jenkins, Clark & Thomas* for appellant.

(1) The indictment does not follow the language of the statute. (2) The record does not show on what charge defendant was arraigned. (3) It does not appear from the record that the defendant was present in court when the jury returned their verdict. *State v. Able*, 65 Mo. 37; *State v. Barnes*, 59 Mo. 154. (4) The court had. no authority to pass final sentence on defendant, immediately on overruling his motion for a new trial. R. S., sec. 1970. (5) The court should not have allowed the check offered in evidence to be read to the jury. (6) The indorsement on the check was a material part of it and the indictment should have shown it. *State v. Hardy*, 20 Me. 81; *Haslip v. State*, 2 Neb. 115. "The writing, when produced, must agree in all essential respects with the description of it in the indictment." 3 Greenl. on Evid. (8 Ed.) sec. 108; 2 Russ. on Crime, sec. 344; 2 Arch. Crim. Pl. 803. In indictments for forgery, very slight inaccuracies will be fatal. *State v. Fay*, 65 Mo. 490; *State v. Chamberlain*, 75 Mo. 382; *State v. Smith*, 31 Mo. 120. (7) If the defendant gave a reasonable account of his possession of the check when first notified that it was not good, this account overcame any pre-

sumptions arising from such possession and threw the
burden of dispoving this account on the prosecution.
*Jones v. State*, 30 Miss. 653 ; *Belot v. State*, 36 Miss. 96 ;
*Garcia v. State*, 26 Tex. 209 ; *Stokes v. State*, 58 Miss.
677 ; *Grade's case*, 12 Wis. 591 ; *Hall's case*, 8 Ind.
440 ; *Perry v. State*, 41 Tex. 488.   It was the duty of
the court to give correct instructions covering the whole
law arising on the facts.   *State v. Banks*, 73 Mo. 592.
(8) If defendant gave a reasonable account of his posses-
sion of the check, the jury should have been told this
overcame any presumption of guilt arising from its being
found in his possession.   *Stokes v. State*, 58 Miss. 677 ;
*Littlejon v. State*, 59 Miss. 273 ; 3 Greenl. on Evid., sec.
31 : Stark on Evid., sec. 840 ; Russ. on Crim., sec. 337 ;
2 Best on Evid., sec. 323 ; *Belot v. State*, 36 Miss. 96 ;
*Garcia v. State*, 26 Tex. 209.   (9) The court should have
granted a new trial.   The Supreme Court will look into
the whole evidence in a criminal case and reverse if the
.conviction is not *warranted* by the *evidence*.   *Slate v.
Cook*, 58 Mo. 540 ; *State v. Connell*, 49 Mo. 282 ; *State v.
Marshall*, 47 Mo. 378 ; *State v. Burgdorf*, 53 Mo. 65.

*B. G. Boone*, Attorney General, for the state.

(1)   The indictment is sufficient.   It employs the
substantial words of the statute, and enables the court
to see under what section it is framed.   R. S., sec. 1406 ;
Bishop Crim. Procedure, secs. 360, 361 ; *Simmons v. State*,
12 Mo. 268 ; *State v. Ragan*, 22 Mo. 459 ; *People v. Thomp-
son*, 4 Cal. 238 ; *United States v. Bachelder*, 2 Dallas, 15.
(2) The record shows that defendant was properly ar-
raigned.   (3) The court was not required, under Revised
Statutes, section 1970, to wait four days for defendant to
file motion in arrest before passing sentence.   (4) The
court properly permitted the check, offered in evidence,
to be read to the jury.   (*a*) Because the check, offered in
evidence, was correctly described in the indictment.

(*b*) Because the indorsement constituted no part of the check alleged to have been forged. Wharton Crim. Law (8 Ed.) 733 ; 2 Arch. Crim. Prac. and Pl. (8 Ed.) 1569 ; *Buckland v. Com.*, 8 Leigh, 732 ; *Com. v. Ward*, 2 Mass. Rep. 397. (5) The court properly refused to give instruction numbered three asked by defendant. The instructions given by the court of its own motion properly declared the law. (6) The sixth instruction for the state was properly given. *State v. Hopper*, 71 Mo. 425 ; *State v. Talbott*, 73 Mo. 347.

SHERWOOD, J.—Under the provision of section 1406, Revised Statutes, 1879, the defendant was indicted for forgery in the second degree, the act charged consisting in forging a check for fifty dollars, in the name of a fictitious firm. A second count in the indictment charged the defendant with uttering the forged check. Being tried, he was convicted on the first count and his punishment assessed at five years imprisonment in the penitentiary.

I. The indictment is well enough and follows approved forms. 3 Chit. Crim. Law, 1048 ; 3 Greenl. Evid., sec. 104 ; *State v. Kroeger*, 48 Mo. 520 ; *State v. Fisher*, 65 Mo. 437. And it uses all the words necessary for a sufficient compliance with the section of the statute upon which it is drawn. It was not necessary that the indictment should expressly allege that the name of the fictitious firm was affixed to the check, since the check is set forth according to its tenor, showing the fact to be that the name of the fictitious firm was affixed to the check. And when the tenor is exact and complete and sufficiently gives the purport, then the purporting clause may be rejected as surplusage. 1 Whart. Crim. Law, sec. 737. The purport, of the instrument necessarily appears where the instrument is set forth according to its tenor. 2 Russ. on Crimes (9 Ed.) 805 ; 3 Chit. Crim. Law, 1041. And it was not necessary to the validity of the first count in the indictment to charge

that on the part of the defendant there was an intent to defraud any particular person.     R. S., sec. 1686 ; *State v. Scott*, 48 Mo. 422.

II.    The record shows the defendant was duly arraigned for forgery in the second degree, the crime of which he was subsequently convicted.

III.    The record is defective in that it does not show that the defendant was present in court when the jury returned their verdict, but this defect is neutralized by section 1891, Revised Statutes, giving the statutory presumption, "that when the record in the appellate court shows that the defendant was present at the commencement, or any other stage of the trial, it shall be presumed, in the absence, etc., that he was present during the whole trial."

IV.    The check charged in the indictment to have been forged was properly admitted in evidence, being correctly described and also set forth according to its tenor.    It was not necessary to set out the endorsement on the check, as that was not charged to be forged, and had nothing to do with the forged instrument.    Whart. Crim. Pl. & Prac., sec. 180 ; Whar. Crim. Law, sec. 738. The indictment charged, and the evidence showed, that Plankington, Armour & Company was a fictitious firm, and the evidence also showed there was no such "real firm" of that name.    For these reasons there was no discrepancy between the facts charged and those proved.

V.    The last point for discussion is the claim made by defendant's counsel, that the evidence does not justify the verdict.    The chief evidence against the defendant in the cause was the fact established on the trial, that the defendant was the utterer of the forged bill, which bears date at Kansas City, September 19, 1883, and is drawn on a bank at that place, and made payable to defendant or bearer.    This evidence was, also, supplemented by statements which he made just preceding his

arrest, and when he took his stand as a witness ; and, also, some other testimony having a little bearing on the issue. In *Commonwealth v. Talbot*, 2 Allen, 161, the defendant being indicted for forging a receipt, the trial court instructed the jury that the possession of the instrument by the person claiming under it, or seeking to derive benefit from it, was strong evidence tending to show that he made the false signature, or caused it to be made, and this instruction was expressly approved. Upon a like state of facts, where the forged instruments were found in the hands of the accused, similar rulings have been made in other states. *State v. Morgan*, 2 Dev. & Bat. 348 ; *State v. Britt*, 3 Dev. 122 ; *Spencer v. Com.*, 2 Leigh 751 ; *Johnson v. State*, 35 Ala. 370 ; *Bland v. People*, 3 Scam. 346 ; *State v. Jones*, 1 McMullan, 236 ; *Henderson v. State*, 14 Tex. 503 ; *Com. v. Parmenter*, 5 Pick. 279. In the two cases just cited, no doubt was cast upon the rule laid down in the others, the only doubt being expressed was respecting the *mere venue* of the offence, and not that the fact of uttering forged paper was not sufficient for conviction of forgery.

In *United States v. Britton*, 2 Mason, 465, the fact of the alteration of the check drawn in the prisoner's favor, he having endorsed it and presented it for payment, was considered sufficient evidence that the alteration of the check, whereby the amount to be paid was largely increased, was considered sufficient evidence for conviction, although it did not appear when or by whom the alteration was made. Bishop, treating of this point and of the current of the American authorities in respect thereto, remarks : " They seem to indicate that, generally, the possession of forged paper, or, at all events, the uttering of it in the county where the indictment is found, is cogent evidence to be addressed to the jury, that the forgery of the paper was committed by the defendant in the same county." 2 Bish. Crim. Proc., sec. 433. East takes the same view as to the effect of uttering

forged paper, for he says: "It seldom happens that direct proof can be given of the very act of forgery ; and where the forger *is not the utterer*, a difficultly has sometimes occurred as to what shall be deemed sufficient evidence of the fact of forging *within the county laid.*"

Touching this point, Wharton, in speaking of the presumption arising from the fact of uttering a forged instrument and of the presumption of innocence, observes : "The defendant is presumed innocent until otherwise proved. In larceny this presumption is overcome by proof that the posssssion is so *recent* that it becomes difficult to conceive how the defendant could have got the property without being in some way concerned in the stealing. So it is with uttering. The uttering may be so closely connected in time with the forging, the utterer may be proved to have such capacity for forging, or such close connection with the forgers, that it becomes, when so accompanied, probable proof of complicity in the forgery." And he denies that the naked fact of *uttering* will justify a jury in convicting a person of *forgery.* 2 Whar. Crim. Law, sec. 1465 *a.* If this modified way of stating the rule of evidence, in cases of this sort, be taken as correct, it does not help the defendant, for, according to his own statement, he was so closely connected in time with the forging, had such close connection with the forger, as to afford sufficient evidence to justify a verdict. And the possession of the check by the defendant occurred so soon after the forgery was committed, before the ink with which the crime was done had scarcely time to dry, that this, of itself, if the analogy, as Wharton states it, between recent possession in larceny and in forgery is to prevail, renders it difficult to conceive how the defendant could have got the check without being concerned in the forging.

Besides all that, there are intrinsic improbabilities in the story told by defendant when on the witness stand. According to that story, he arrived in Kansas

City on the cars, from Chicago, on the nineteenth day of September, 1883. On his way he met F. C. Harris, whom he had known in Chicago two or three weeks, bound, also, for Kansas City. To pass the time they played poker on the cars, and defendant won fifty dollars from him, which Harris promised to pay him *in money* when he got to Kansas City. From aught to the contrary appearing, Harris was as much a stranger in Kansas City as was the defendant, and yet, after their arrival at the Union depot in Kansas City, and while defendant waited at the depot, Harris went out and in a *few minutes* returned with and gave the check to defendant, and told him he was going to stop at the Delmonico Hotel. Now if, as appears to be the case, Harris was really a stranger in Kansas City, he would have had to pay the money for the check if he bought it; but *the money* was what Harris promised to defendant, and it was *money* which defendant wanted and not a *check*, as being a stranger in the city, he would find difficulty in getting the check cashed ; and yet defendant receives the check without objection. Again, Harris and defendant arrived at Kansas City on the *nineteenth* of September, 1883. The clerk of the Delmonico Hotel testified that, he registered the name of F. C. Harris on the hotel register, residence stated to be from *Missouri*, and that this occurred on the night of September *eighteenth*, the *day before* Harris arrived in the city, if defendant's story is to be credited. Taking all these things into consideration, it would be going too far, farther than any court, so far as I am aware, has yet gone, to say that there is not evidence in this cause sufficient to justify a verdict.

Therefore, the judgment is affirmed. All concur.