THE STATE v. BURD, *Appellant.*

Division Two, May 2, 1893.

</div>

1. **Criminal Law**: FORGERY: EVIDENCE. The uttering of forged paper in the county where the indictment is found is cogent evidence of the commission of the forgery in the same county.

2. **Criminal Practice**: NEWLY DISCOVERED EVIDENCE: COUNTER AFFIDAVITS. The state it seems may file counter affidavits on the issue of newly discovered evidence raised in a motion for a new trial.

*Appeal from Dallas Circuit Court.*— HON. W. I. WALLACE, Judge.

AFFIRMED.

*Upton & Miller* for appellant.

*R. F. Walker,* Attorney General, for the state.

(1) The evidence was sufficient to authorize the verdict of guilty by the jury. Revised Statutes, 1889, sec. 3661; *State v. Rucker,* 93 Mo. 88; *State v. Yerger,* 83 Mo. 83. (2) Defendant's motion for new trial on the ground of newly discovered evidence was properly overruled. No affidavit filed in support of it contains the allegation that it is not cumulative, or so material that it would probably produce a different result. These allegations are necessary, as has been held in cases of *State v. Ray,* 53 Mo. 349; *State v. Welsor* (decided Feb. 14, 1893, not yet reported).

GANTT, P. J.—The defendant was indicted by the grand jury of Dallas county and convicted of forgery. On the twenty-fifth day of December, 1890, T. S. Tinsley drew his check on the Dallas County Bank, a banking company incorporated under the laws of this state, in favor of J. W. Frost for sixty cents in words and figures as follows:

"BUFFALO, Mo., December 25, 1890.

"*Dallas County Bank:*

"Pay to J. W. Frost or bearer 60-100 dollars.

"$ .60-100.            THADDEUS S. TINSLEY."

L. C. Ball was the proprietor of a store in Long Lane, a village in Dallas county, and the defendant, Jeff. Burd, was his clerk. J. W. Frost purchased a hat of defendant in Ball's store and gave this check in part payment for that and some other articles of merchandise during Christmas week. A day or two after Frost bought the hat, G. B. Franklin saw this check in the possession of defendant and it still called for only sixty cents.

On January 1, 1891, the defendant in person presented this check to the cashier of the bank. At that time it purported to call for sixty dollars and sixty cents ($60.60). Mr. Tinsley having remarked to the cashier that he had sent Frost a check for sixty cents, as soon as he saw it he noticed that it was for $60.60 and examining it closely declined to honor it, but retained it until he could show it to Mr. Tinsley, the drawer.

Upon payment being refused, defendant wanted to know if there was anything wrong with the check. He said he was working at Ball's store, and he had traded Mr. Frost a hat for the check, and "he wanted to know what the check called for." When told it was for $60.60 he remarked, "if there was anything wrong

in that check he was responsible for it, as he had it in his possession, and, from the time he had got it, it had been in his pocket all the time." He asked to have the check returned to him, which the cashier declined to do.

On the Sunday following the presentation of the check at the bank, Frost, Ball and defendant met in the public road, when Ball in the presence and hearing of defendant addressing Frost, said, "what did that check call for that you let Burd have." Frost answered "sixty cents." Ball replied: "There was something wrong at the bank; they won't pay it; the check was all right when it left me." Defendant sat upon his horse and did not say a word, except when Frost asked for some paper on which to write a note, defendant said: "Here, I have some."

As soon as Tinsley saw the check he repudiated it as a forgery, as to the "$60" inserted in it.

Defendant was subsequently indicted and recognized to appear at the October term, 1891. He appeared at the court on the first and second days of the term, but fled on the third day. He was afterwards apprehended at Decatur, Texas, as a fugitive from justice, and brought back to Dallas county. On the witness stand he gave the following unsatisfactory account of his flight: "Well, I come out here, and it looked to me like the check I had fetched to town, and it looked kind like to me like it was in my possession; and I didn't know hardly what to do for the best; I didn't know what to do, and I thought may be the best thing was to let it die out and may be the truth would come out about it; I didn't know what would be the best; that is the reason I left here last October." When arrested in the state of Texas defendant said to the constable, "before he (defendant) would suffer he would give the whole thing away."

There was some conflicting testimony as to whether or not the word "sixty" was in the handwriting of the defendant.

Defendant, though able to procure an appeal bond in the sum of $2,000, seems not to have been able to secure the services of his counsel to prepare and file a brief in his behalf in this court. We have, however, gone through the record, and we take it that he bases his right to a reversal upon the insufficiency of the evidence to show that he had actually written the sixty dollars ($60) in the check, and that proof of uttering alone will not sustain a charge of forgery, and upon his showing for a new trial based upon newly-discovered evidence.

I. We think the evidence warrants the verdict; that the check was originally drawn for only sixty cents is an admitted fact; that it was transferred to defendant for that amount by Frost is not denied. We have defendant's own word for it, that from the time Frost delivered it to him until he, in person, presented it at the bank for payment, it had been in his sole possession; that it was then in an altered and forged condition is not open to doubt.

The uttering of forged paper in the county where the indictment is found is held to be cogent evidence that the forgery was committed by the defendant in the same county. 2 Bishop on Criminal Procedure, sec. 433; *State v. Yerger*, 86 Mo. 33; *State v. Rucker*, 93 Mo. 88.

II. The court committed no error in giving or refusing instructions. The rulings in this respect were in accord with the decisions of this court and the recognized principles as announced by the most eminent law writers. *State v. Yerger, supra.*

III. There was no error in refusing a new trial on the ground of newly-discovered evidence. The coun-

ter-affidavits filed by the state presented a question for the determination of the trial judge, and, if we are to weigh the probabilities at all, he seems to have exercised a wise discretion. There is not the slightest reason for believing the evidence, if obtained, would have produced a different result.

The judgment is affirmed. All of this division concur.