## THE STATE v. ALLEN, *Appellant*.

### Division Two, June 13, 1893.

1. **Criminal Law:** FORGERY: COUNTERFEIT CHECK. It is not essential to the conviction of one charged with unlawfully having in his possession a fictitious and counterfeit check, knowing it to be forged and with feloniously attempting to utter and pass it, to show that he personally affixed the fictitious name to the check.

2. **Practice, Criminal:** INSTRUCTION. An instruction should not be given, either in a civil or criminal case, where there is no evidence upon which to base it.

State v. Allen.

3. **Criminal Law:** FORGERY: COUNTERFEIT CHECK. Where on the trial of a defendant for unlawfully having in his possession a fictitious and counterfeit check, knowing it to be forged and with feloniously attempting to utter and pass it, the court instructs the jury that they must, in order to convict, find the facts charged beyond a reasonable doubt, it is not error to refuse to instruct the jury that they must find beyond a reasonable doubt that there was no such person as that whose name was signed to the check or find the defendant not guilty.

4. ——: ——: ——. In such case it is necessary for the prosecution to show that the name signed to the check is fictitious.

5. ——: ——: ——. Where the uncontradicted evidence shows that defendant was in possession of the check immediately after it was drawn, that it was worthless, that his explanation of his possession was unreasonable, that many active business men of the vicinity knew no such person as that whose name was signed to the check, and that defendant gave no evidence of the existence of such person, it sufficiently shows the fictitious character of the signature and will sustain a conviction.

6. **Check:** UNKNOWN SIGNATURE. One who tenders a note or check in payment for goods, drawn by a person unknown to those to whom he proffers it, should account for the existence of such unknown person when it is demanded, and it is charged that the drawer is fictitious.

7. **Criminal Law:** FORGERY: EVIDENCE: VENUE. The possession of a forged instrument, or the uttering of it by one in the county in which the indictment is found, is strong evidence to show that the forgery of the instrument was committed by him in the same county.

*Appeal from Jackson Criminal Court.*—HON. JOHN W. WOFFORD, Judge.

AFFIRMED.

*Charles V. Fyke* for appellant.

(1) Defendant's demurrer to the evidence should have been sustained. (2) The court erred in refusing instruction No. 2, asked by defendant. The question in the case was whether or not H. A. Faunce was a fictitious name. This instruction submitted that question properly to the jury, and should have been given. The court did not, by any instruction for the state,

submit that question.    (3) The court erred in refusing defendant's instruction No. 3.    It is impossible to conceive upon what theory the court refused that instruction.    It fairly submitted to the jury a question of fact which it was necessary for them to pass upon, and if they found that H. A. Faunce existed and signed the check, then how could the defendant be guilty of forging the checks?   Whether or not Faunce had any money in the bank upon which the check was drawn is under this indictment wholly immaterial.   Defendant is not indicted for obtaining money under false pretenses, or by means of a trick; but the specific charge against him is forgery and passing a forged check, knowing the same to be a false and forged check, and not that there was no such person as H. A. Faunce.    The state has wholly failed to establish the defendant's guilt of that charge, and the cause should be reversed and the defendant discharged.

*R. F. Walker*, Attorney General, and *Marcy K. Brown*, Prosecuting Attorney, for the state.

(1) The indictment is sufficient.   *State v. Watson*, 65 Mo. 115; *State v. Phillips*, 78 Mo. 49; *State v. Yerger*, 86 Mo. 33; *State v. Rucker*, 93 Mo. 88; *State v. Warren*, 109 Mo. 430.    (2) No error was committed by the court in its instructions, which fully covered the case and correctly declared the law.   *State v. Pullens*, 81 Mo. 387; *State v. Warren*, 109 Mo. 430; *State v. Mix*, 15 Mo. 158.    (3) No error was committed by the court against defendant in the admission or exclusion of evidence.   It is always competent for the state, after having shown that the defendant has passed, or attempted to pass, a false, forged or counterfeited instrument, in order to show guilty knowledge, or

criminal intent, of the defendant, to prove that he had passed other false, forged or counterfeited instruments of a similar kind to other persons at different times before or subsequent to the indictment. *State v. Mix*, 15 Mo. 153, and cases cited on page 155; 1 Bishop on Criminal Procedure [3 Ed.], secs. 1126–1128; 2 Bishop on Criminal Procedure [3 Ed.], sec. 428, and cases cited in note 11; *State v. Williamson*, 106 Mo. 163; *State v. Greenwade*, 72 Mo. 298; *State v. Harrold*, 33 Mo. 496; *State v. Gabriel*, 88 Mo. 631; *State v. Jackson*, 95 Mo. 623; *State v. Bayne*, 88 Mo. 604; *State v. Myers*, 82 Mo. 558. (4) The evidence was ample upon every fact necessary for the state to prove, and clearly and abundantly shows the defendant to be guilty of the offense for which he was convicted. *State v. Warren*, 109 Mo. 430; 2 Bishop Criminal Practice [3 Ed.], secs. 427a and 428; *State v. Horner*, 48 Mo. 520; *State v. Phillips*, 78 Mo. 49; *State v. Foster*, 65 Mo. 437; *State v. Rucker*, 93 Mo. 88; *State v. Chamberlain*, 89 Mo. 129. The well-established rule in this state is, that where the testimony is sufficient in the judgment of the trial court to warrant the submission of the question of defendant's guilt or innocence to the jury, and they have found him guilty, such action will not be reviewed here unless it clearly and affirmatively appears that this discretion and judgment has been abused. *State v. Jackson*, 106 Mo. 181; *State v. Howell*, 100 Mo. 628; *State v. Orrick*, 106 Mo. 111; *State v. Lowe*, 93 Mo. 547; *State v. Hicks*, 92 Mo. 432; *State v. Hammond*, 77 Mo. 158; *State v. Gann*, 72 Mo. 374; *State v. Musick*, 71 Mo. 401; *State v. Moxley*, 115 Mo. 644.

GANTT, P. J.—The defendant was indicted and convicted in the criminal court of Jackson county at the September term, 1892, under the following count in the indictment:

"And the grand jurors aforesaid, upon their oath aforesaid, do further say and present that Charles F. Allen, at the county of Jackson, state of Missouri, on the thirteenth day of August, 1892, unlawfully did have in his possession and custody a certain false, forged and counterfeit check purporting to be made by H. A. Faunce, a fictitious person, and purporting to be drawn on the Midland National Bank, a banking corporation duly organized according to the laws of the state of Missouri, which said false, forged and counterfeited check is of the tenor following:

'‘KANSAS CITY, Mo., Aug. 13, 1892.
'‘*Midland National Bank $28, No. 57.*
'‘Capital, $500,000.
'‘Pay to Harry F. Allen, or wages, $28.50-100.
'‘Twenty-eight    .    .    .    .    50-100 dollars.
'‘(Signed)    H. A. FAUNCE.'

"With the felonious intent to utter, pass, sell and exchange the said false, forged and counterfeit check as true to Julius Stein and Sigmund Stein, parties doing business under the name and style of the National Clothing Company, with intent to defraud them, the said Julius Stein and Sigmund Stein, parties as aforesaid; he, the said Charles F. Allen, then and there well knowing the said check to be false, forged and counterfeit, against the peace and dignity of the state."

The evidence shows that on August 13, 1892, the defendant went into the National Clothing Co.'s store at Kansas City, and after purchasing some clothing, offered the check described in the indictment in payment for said clothing. He stated in answer to interrogatories that he worked on a farm for a man of the name of H. A. Faunce who lived near Independence, Missouri (a suburb of Kansas City), and that the check had been

given to him in payment for his week's wages. His appearance being anything but that of a farm laborer, and his actions arousing the suspicions of the proprietor of the store, said proprietor immediately caused inquiries to be made of a neighboring business man (who had resided at Independence and was well acquainted in that locality), as to whether any such person as H. A. Faunce existed. Upon information thus received, he reported the matter, and defendant was apprehended and arrested.

The state, in order to show guilty knowledge of defendant, proved by the witness Goldenberg, the proprietor of another clothing store in Kansas City, that shortly before, on the same day, the defendant bought some clothing from the store of said witness, after making a similar statement to those already made by him at the store of the National Clothing Co., and gave him in payment therefor another worthless check for $26.75 on the same bank, signed with the same name, H. A. Faunce.

The state further showed by the paying teller of said Midland National Bank, who had been connected with that bank and other banks in that city for over ten years, and was well acquainted with the residents of that county, that he knew of no such person being in existence as H. A. Faunce; that no such person had any money deposited with said bank; that there was no such name on the books of the bank, and no record of there ever having been any such person who then had, or had ever had at any time, any money deposited or any account whatever with said bank.

Defendant offered one witness, H. C. Lewis, another clothing merchant of Kansas City, by whom he proved that a man representing himself as H. A. Faunce about the same time passed a check on him on the same bank for $28.50, purporting to be drawn by

Frank M. Conway, *which also proved to be worthless.* The purpose of this evidence was to disprove that H. A. Faunce was a fictitious person, but Mr. Lewis testified he never saw the man prior to his passing the check, and had never seen him since, *and knew no such man.* It was then shown by the defendant that the checks introduced by the state were in the same handwriting of the one received by Lewis.

Defendant did not testify in his own behalf and offered no other evidence of the existence of H. A. Faunce.

The defendant asked and the court refused to give the following instructions:

"1. The court instructs the jury that before you can convict the defendant of forgery, you must believe from the evidence that the defendant signed the fictitious name to the check introduced in evidence.

"2. The court instructs the jury that it is incumbent on the state to show beyond a reasonable doubt that there was no such person as H. A. Faunce and if the state has failed to do so you will find the defendant not guilty.

"3. The court instructs the jury that if you find and believe from the evidence that there was at the time the checks were executed, a person by the name of H. A. Faunce, and that he signed the same, then you will find the defendant not guilty even though you may further find that the defendant signed either or both of said checks."

To the refusing of which instructions and each of them the defendant then and there at the time excepted.

I. The refusal of the first instruction prayed by defendant was not error. It was not at all essential to his conviction under the second count that he should have personally affixed the fictitious name to the check.

He was charged only with unlawfully having it in his possession, knowing it to be forged, and feloniously attempting to utter and pass it.

II. The third instruction, that if the jury believed there was such a man in existence at the time the checks were executed, they should acquit, was properly refused, because there was not a scintilla of evidence that such a person ever existed.

The testimony of Mr. Lewis that the party who passed the worthless check on him represented himself to be named Faunce was no evidence of the truth of that assertion. It is just as essential in criminal as in civil practice that there should be evidence upon which to base an instruction. It is error in either, to give an instruction without evidence upon which to found it.

III. The denial of the second instruction is made the basis of earnest complaint by the ingenious counsel for defendant. He justly assumes that the jury were bound to be satisfied beyond a reasonable doubt of defendant's guilt, but he seemingly over-looks the fact that the jury are required by the court's instructions to find that defendant knowingly had said check in his possession, knowing it to be forged, with intent to pass it, and were required to find these facts beyond a reasonable doubt.

Having so instructed, it was not necessary to single out each element of the crime, and again charge that it must be found beyond a reasonable doubt. The issue was so simple and plain that the two instructions given by the court fully covered it.

IV. Finally defendant claims that there was a total lack of proof that H. A. Faunce was a fictitious person and that any other person other than Faunce signed the check. It is undeniably true that under the allegations of this indictment, it was necessary to show that no such person as Faunce existed. In other words, the

state assumed in the first instance to prove a negative, and this raises the interesting question how much evidence the state under such circumstances must produce. Here the defendant was shown to have been in possession of at least two worthless checks, purporting to have been drawn by Faunce on the same day that he uttered them. He was called upon to state who Faunce was and where he lived. He represented him to be a farmer, living near Independence in the county where he was apprehended. Defendant represented himself as a farm hand; that these checks were for his week's wages, one being for $28.50, the other for $28.00. It was shown that neither of the clothing merchants or their employes knew such a man as Faunce. It was further shown that the paying teller of the Midland National Bank, who had been connected with that bank and other banking institutions in that county for ten years, never knew or heard of such a man as Faunce.

It was shown that defendant was arrested charged with uttering forged paper on thirteenth of August, and he was put on his trial the last day of September, in the same county in which he claimed that Faunce was living on a farm, not exceeding ten miles away. Now when these facts were shown, with no evidence whatever by defendant to show the existence of Faunce, was it incumbent on the state to call every citizen of the county to negative the existence of this man Faunce? We think not. We think the *onus* of accounting for the existence of this party, whose checks defendant was handling so freely, and with which he was obtaining the goods of the merchants of Kansas City, at this stage, changed from the state to defendant.

The rule requiring the state to make its proof beyond a reasonable doubt is founded on the extreme jealousy of the rights of the citizen, and the danger of injustice, but it has never gone so far that it excludes

from the trial of a criminal case, the reasonable and natural presumption that obtains in other investigations.

Hence the courts have been drawn, both by necessity and propriety, to a resort to presumptions in those cases, in which the offense is easily capable of express proof.

A most familiar instance is the presumption of guilt arising from the recent possession of stolen property. It is possible in such a case that a wrong inferrence may be drawn, but the bare possibility of a mistake has not been allowed to overcome the almost universal experience in such cases. It has been found to promote justice and punish crime, and rare indeed have been the well-authenticated instances in which an innocent man has suffered therefrom.

There is nothing harsh about the rule. It simply imposes upon the possessor of stolen property the duty to account for his possession. It is a fact peculiarly within his own knowledge. It is natural that, if innocent, he would be anxious to demonstrate that he was without fault. If he makes no effort to explain, or gives an unreasonable account, it tends greatly to strengthen the conviction of his guilt. The presumption then is founded upon his ability to show with ease, the real truth, and his refusal to do so. This presumption has ever been given its full force in this state. *State v. Kelly*, 73 Mo. 608 and cases cited.

The presumption arising from possession of the fruits of crime has, with equal reason and propriety, been indulged in prosecutions for forgery. The same considerations have actuated the courts. It is no hardship when one stands sponsor for a note or check, drawn by some person unknown to those to whom he proffers it, for goods, that he should at least account for the existence of such a person; clearly so when it is

demanded and it is charged that the drawer or maker is fictitious.

SHERWOOD, Judge, in *State v. Yerger*, 86 Mo. 33, reviewed the authorities and reached the conclusion that the possession of forged paper or at all events, the uttering of it, in the county where the indictment is found, is cogent evidence to be addressed to the jury, that the forgery was committed by defendant in the county. 2 Bishop on Criminal Procedure, sec. 433; *Com. v. Talbot*, 2 Allen, 161; *State v. Morgan*, 2 Dev. & Bat. 348. *State v. Yerger* was subsequently cited, and relied on in *State v. Haws*, 98 Mo. 188, to sustain a conviction of forgery, based upon the presumption arising from the possession of the forged instrument, and in the recent case of *State v. Burd*, 115 Mo. 405.

The uncontradicted evidence of the worthlessness of the checks, the possession of these checks by defendant immediately after they were drawn, the unreasonable account given by him that they were one week's wages for a farm hand; the fact that so many active business men of the county knew no such man as Faunce, coupled with the absence of all evidence on his part of the existence of Faunce, a fact he could readily have shown, if he was not falsifying, we think afford ample evidence to sustain his conviction, and the judgment is affirmed. All of this division concur.