No. 26,248.

THE STATE OF KANSAS, *Appellee*, v. JOHN EARLEY, *Appellant*.

SYLLABUS BY THE COURT.

1. CRIMINAL LAW—*Appeal—Review—Pleadings, Proof and Variance.* Rule followed that only such a material variance between pleading and proof as may mislead an accused in preparing and making his defense is of any consequence in an appellate review.

2. INDICTMENT AND INFORMATION—*Variance as to Names.* Where a defendant was convicted of feloniously indorsing on the back of a check the name of a fictitious person whose name also appeared on its face as payee, it was immaterial whether the name of the fictitious payee was that of "Roy Barber" or "Ray Barber," following *The State v. Wahl,* 118 Kan. 771, 236 Pac. 652.

3. FORGERY—*Evidence—Presumptions—Possession of Forged Instrument.* Possession of a forged instrument by one who utters or seeks to utter it, or otherwise to realize on it or profit by it, without a reasonable explanation of how the possessor acquired it, warrants an inference that the possessor himself committed the forgery or was a guilty accessory to its commission.

Appeal from Cloud district court; JOHN C. HOGIN, judge. Opinion filed October 10, 1925. Affirmed.

*W. C. Perry,* of Belleville, and *R. M. Anderson,* of Beloit, for the appellant.

*C. B. Griffith,* attorney-general, and *Leon W. Lundblade,* county attorney, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: Defendant was convicted of three felonies, being three separate counts of the same information, and which formally charged him with forging, passing and falsely indorsing the following instrument:

"GLASCO, KANSAS, 11/15, 1923.
"THE FARMERS STATE BANK

"Pay to........................Roy Barber........................or bearer $16.75/00
Sixteen 75/100........................................................................Dollars
For corn husking.                                       JAMES MORE."
    "Indorsements on the back: Roy Barber, B. & M. Mercantile Co."

The state's evidence tended to show that the pretended maker of the check, James More, was a fictitious person, and so too was the payee, Roy Barber. This evidence was not very clear as to whether the latter's name was Roy Barber or Ray Barber. For conviction

1. Criminal Law, 17 C. J. § 3626; L. R. A. 1916D, 841; 21 R. C. L. 611. 2. Forgery, 26 C. J. § 100; 27 L. R. A., n. s., 1003. 3. Id., 26 C. J. § 119; 12 R. C. L. 104.

State v. Earley.

under the first count, that of forging the name of James More, a fictitious person, the state relied upon the evidence inherent in the circumstance that defendant was proved to have been in possession of the instrument shortly before it was feloniously passed. The proof that defendant feloniously passed the check to J. R. Moffat, a Glasco merchant doing business as the B. & M. Mercantile Co., and that defendant feloniously wrote the name of Roy Barber on the back of the check, was positive and direct.

The jury returned a verdict against the defendant on all three counts, and by the judgment of the court the defendant was sentenced to the penitentiary for a term of from one to ten years on each count, the three sentences to run concurrently.

Defendant assigns various errors, one of which presents a serious question and will be considered last. As to the others defendant contends there was a variance between the charge and the proof involved in the third count. The information charged that defendant had forged the indorsement of Roy Barber, a fictitious person, on the bogus check. It was the contention of the defendant that the name appearing on the check as payee and indorser read "Ray Barber"; but the point was of no importance, since it is inconceivable that this trifling variance could have prejudiced or misled defendant in making his defense. The state had alleged in the information and its evidence tended quite clearly to show that the name of the payee and indorser was that of a fictitious person, and that defendant indorsed the check himself in the presence of the party to whom he fraudulently transferred it. In some of our early cases more consideration was given to the matter of variance between pleading and proof than is now accorded it. The law is now settled that only a material variance, one which may have misled a defendant to his prejudice in preparing and making his defense, is of any consequence in an appellate review. (*The State v. Wahl,* 118 Kan. 771, 236 Pac. 652.)

Error is also urged because the trial court refused to permit the expert witness Cory to testify that in his opinion the name indorsed on the note was that of Ray Barber and not Roy Barber. But as we have just remarked, defendant does not show and it cannot be conceived how the question whether the forged word was Roy or Ray was of the slightest materiality.

Passing then to the serious question in this appeal, we have to

consider the sufficiency of the evidence to prove that defendant signed the name of James More to the check. There was testimony which tended to show that the name was that of a fictitious person. Nobody of that name had an account in the bank on which the check was drawn. Citizens of Glasco of many years' residence testified that no such person existed thereabout. In Underhill's Criminal Evidence, third edition, § 633, it is said:

"Forgery is committed when a fictitious name, or the name of a dead person, is signed to an instrument with a fraudulent intent. The name signed must be that of some other person than the accused, though it may be of a man of the same name, if, by signing that name, the accused meant to defraud some one. Hence, evidence is relevant which shows or tends to show the existence or nonexistence of the person who is supposed or pretended to be indicated by the name; but the state need not prove beyond a reasonable doubt that there was no such person. A resident of the town in which he is alleged to have lived is competent to prove that he was unknown there, though the witness may not be able to swear absolutely that he knew every resident. It is not always necessary for the prosecution to produce in court the person whose name is alleged to have been forged. The fact that he did not consent to the signing of his name may be proved from the circumstances. It may be shown in general that policemen, postmen and residents had never heard of him, and that an officer of the court, as a sheriff, though he made a diligent search among persons most likely to know him, was unable to find him or to secure any information of his whereabouts. The searcher may state what he did and the fact that he had a conversation with some one, and with whom, and could get no information, though he may not repeat answers made to his inquiries (as these would be hearsay) for the purpose of proving the fictitious character of the person. Evidence of this sort, proving *prima facie* the nonexistence of the person whose name was signed, may be sufficient in the absence of rebuttal. The defendant may prove any facts by which the inference that the name is fictitious may be overcome. So when it was shown that no one could be found to answer to the name which was signed, the accused was allowed to show that the person, being threatened with a criminal prosecution, had left the state and that he had endeavored in vain to find him."

But as to the actual forgery of the name James More by defendant, the state admits that it relies for proof to sustain the conviction on the first count on the evidence inherent in the circumstance that he was in possession of the forged check shortly or immediately before it was feloniously passed by defendant. The state invokes an analogous rule to that which attaches to the unexplained possession of recently stolen property, and would justify the conviction on the first count on the ground that the absence of a reasonable explanation of defendant's possession of the forged check raised a presump-

tion of fact that he forged it himself. There seems to be good authority for this, although the doctrine has not hitherto been authoritatively approved by this court.

In 26 C. J. 961, with supporting citations, it is said:

"Possession of a forged paper by accused, with a claim of title thereunder, if unexplained, raises a conclusive presumption that he forged it, or procured it to be forged, and this is so, although the instrument is payable to accused or bearer."

In 12 R. C. L. 164 it is said:

"A person who is recently in possession of, and attempts to sell or obtain money on, a forged note is presumed to have forged it, and unless such possession or forgery is satisfactorily explained the presumption becomes conclusive. A forged note is presumed to have been forged on the day it is dated. When the jury find upon evidence that the name alleged to be forged was of a fictitious person, the inference arises that the person who uttered and published, as true, the instrument bearing the name, either forged it or knew it to be forged."

In *State v. Peterson*, 129 N. C. 556, 85 A. S. R. 756, 758, where the defendant was convicted of forgery upon evidence that the forged instrument had been in his possession and that he had attempted to utter it. The supreme court said:

"The defendant excepted to the charge because of the following instructions: '1. Where one is found in the possession of a forged instrument and is endeavoring to obtain money or advances upon it, this raises a presumption that defendant either forged or consented to the forging of such instrument, and nothing else appearing the person would be presumed to be guilty.' In this there was no error: *State v. Morgan*, 19 N. C. 348; *State v. Britt*, 14 N. C. 122; *State v. Lane*, 80 N. C. 407; *State v. Allen*, 116 N. C. 548, 22 S. W. 792. '2. If you are satisfied beyond a reasonable doubt that the paper [in this case the note] was a forgery, and that the defendant had it in his possession and tried to obtain money from Crowell or Shuford or the bank upon it, then this raises a presumption of guilt, and, unless he has rebutted it, you will return a verdict of guilty.' This is also warranted by the precedents: 2 McClain's Criminal Law, sec. 809, and cases there cited.

"No error." (p. 557.)

In *State v. Williams*, 152 Mo. 115, 75 A. S. R. 441, 446, it was said:

"Error is assigned on the instruction given by the court to the effect that one who is recently in possession of and attempts to sell or obtain money on a forged note is presumed to have forged the same, and unless such possession or forgery is satisfactorily explained the presumption becomes conclusive.

"In *State v. Allen*, 116 Mo. 556, it was ruled that the presumption arising from the possession of the fruits of crime has with reason and propriety been indulged in prosecutions for forgery. The same considerations have actuated

29—119 Kan.

the courts as obtained in larceny and burglary, in which the recent possession of stolen property is *prima facie* evidence that the possessor is the thief, and, unless explained, becomes a conclusive presumption of his guilt: *State v. Kelly,* 73 Mo. 608; *State v. Burd,* 115 Mo. 405; *State v. Haws,* 98 Mo. 188; *State v. Yerger,* 86 Mo. 33. Tested by these repeated rulings, there was no error in the instruction." (See, also, *State v. Psycher,* 179 Mo. 140.)

In *Commonwealth v. Talbot,* 84 Mass. 161, the headnote reads:

"Possession of a forged instrument by a person claiming under it is strong evidence tending to prove that he forged it, or caused it to be forged." (Syl.)

In the opinion the court said:

"The jury were rightly instructed that the defendant's possession of the forged paper was strong evidence tending to prove that he forged it, or caused it to be forged. (Roscoe's Crim. Ev., 2d ed., 453.)"

In *State v. Waterbury,* 133 Ia. 135, where the offense charged was that of knowingly uttering a forged check, the supreme court of Iowa held that possession of a forged check purporting to be indorsed by a payee other than the accused, the title to which would pass upon delivery, was insufficient to support a conviction. But in the course of its opinion the court said:

"The rule requiring the state to establish guilt beyond reasonable doubt is founded upon the jealousy with which the law shields the rights of the citizen in order to avoid the danger of injustice; but it has never been held to deny that the effect should be given in the trial of criminal cases to those natural and reasonable presumptions which obtain in other investigations. Thus, in prosecutions for larceny and burglary, the presumption of guilt arising from the possession of property recently stolen is resorted to, not alone owing to the difficulty of direct proof, but because universal experience has demonstrated that rarely have the innocent suffered therefrom. It has proven indispensable to the promotion of justice and the prosecution of crime. It merely requires the accused to account for his possession, a fact peculiarly within his own knowledge. If innocent, he should be anxious to exculpate himself from blame. If he remains silent or furnishes an unreasonable explanation, the presumption, as it rests on his ability easily to account for the manner in which he acquired possession and his failure to do so, is strengthened, and is such evidence of guilt as will sustain a verdict. (*State v. Brady,* 121 Ia. 561.)

"The possession of the fruits of crime have with equal propriety and as good reason given rise to the like presumption in prosecutions for forgery. The principle was clearly stated in the early case of *State v. Collins,* 14 N. C. 122, where it was said that 'being in possession of the forged order drawn in his own favor were facts constituting complete proof that either by himself or by false conspiracy with others he forged or assented to the forgery of the instrument—that he either did the act or caused it to be done—until he showed the actual perpetrator, and that he himself was not privy. It is very different from having a counterfeit bank note. That is an instrument current in its nature

State v. Earley.

and use, and will come innocently to one's hands. But it is next to impossible that the defendant could get possession of such an instrument as this, purporting to be for his own benefit, without having fabricated or aided in the fabrication of it. If the instrument be a forgery, he who holds it under such circumstances is taken to be the forger unless he shows the contrary.' To the same effect, see *Hobbs v. State,* 75 Ala. 1; *State v. Williams,* 152 Mo. 115, 53 S. W. 424, 75 Am. St. Rep. 441; *State v. Peterson,* 128 N. C. 556, 40 S. E. 9, 85 Am. St. Rep. 756; *State v. Allen,* 116 Mo. 548, 22 S. W. 792; *U. S. v. Britton,* 2 Mason, 465, Fed. Cas. No. 14,650; *State v. Yerger,* 86 Mo. 33; *State v. Morgan,* 35 La. Ann. 293; 4 Elliott, Ev., sec. 2484. Bishop, in referring to the current of American authorities, says: 'They seem to indicate that generally the possession of forged paper, or at all events the uttering, if in the county where the indictment is found, is cogent evidence to be addressed to the jury that the forgery of the paper was committed by the defendant in the same county.' (2 Bishop, Criminal Proc., sec. 433.) Touching the same point, Wharton says: 'In larceny this presumption [of innocence] is overcome by proof that the possession is so recent that it becomes difficult to conceive how the defendant could have gotten the property without being in some way concerned in the stealing. So it is with uttering. The uttering may be so closely connected in or with the forging, the utterer may be proven to have such capacity for forging or such close connection with the forgers that it becomes, when so shown, probably proof of complicity in the forgery.' " (p. 138.)

From the foregoing it seems clear that the legal principle for which the state contends is well founded, and the rule may be stated thus: Possession of a forged instrument by one who utters or seeks to utter it or otherwise to realize on it or profit by it, without a reasonable explanation of how the possessor acquired it, warrants an inference that the possessor himself committed the forgery or was a guilty accessory to its commission.

See discussion in the analogous case of *The State v. Bell,* 109 Kan. 767, 770, 771, 201 Pac. 1110.

The judgment is affirmed.